Odis SIMPSON, Appellant,

v.

Max CLELAND, Individually and in his official capacity as Administrator of Veterans Affairs, Veterans Administration, et al.

Odis SIMPSON, Appellant,

v.

Max CLELAND, Individually and in his official capacity as Administrator of Veterans Affairs, Veterans Administration, et al.

Nos. 78–2203, 79–1382.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1980.

Decided Jan. 16, 1981.

Dalton Howard, Washington, D. C., with whom Wanda D. Foster, Washington, D. C., was on brief, for appellant in Nos. 78–2203 and 79–1382.

Richard A. Rothschild, San Francisco, Cal., of the bar of the Supreme Court of California pro hac vice by special leave of Court with whom John E. McDermott and Patricia M. Tenoso, Los Angeles, Cal., were on brief, for amicus curiae urging reversal in No. 78–2203.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, and Nathan Dodell, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees, Federal in Nos. 78–2203 and 79–1382. Charles F. C. Ruff, U. S. Atty., Washington, D. C., also for appellee.

Robert W. Haas, Houston, Tex., for appellee, Metropolitan Mortgage Fund, Inc., in No. 79–1382.

Harry Heller, was on brief, for appellees, Manufacturers Hanover Trust Co. in No. 79–1382.

Leonard C. Collins, Washington, D. C., for appellee, Owen & Kay in Nos. 78–2203 and 79–1382.

Saul M. Schwartzbach, College Park, Md., for appellee, Irvin P. Greenbaum in No. 78–2203.

Joseph H. Schneider and Albert Ginsberg, Silver Spring, Md., for appellee, Jack Spicer Real Estate, Inc., in No. 78–2203.

Before McGOWAN and ROBINSON, Circuit Judges and OBERDORFER *, United States District Judge for the District of Columbia.

Opinion for the Court filed by District Judge OBERDORFER.

OBERDORFER, District Judge.

In 1962, after 20 years of service, appellant retired from the United States Army. The following year, he and his wife bought a home, the purchase price of which was borrowed from appellee Metropolitan Mortgage Fund, Inc.[1] The loan was secured by a mortgage, and sixty percent of the loan was guaranteed by the Veterans Administration (V.A.). On February 23, 1977, after repeated defaults, repeated written and personal notices to appellant by the lender, and at least two notices by the V.A., the lender foreclosed the mortgage and sold the property. Appellant brought this action in the United States District Court for the District of Columbia for, among other things, an order declaring the foreclosure sale void, vacating it, and restoring the *status quo*, on the ground that appellees failed to make reasonable efforts to service the loan or to avoid foreclosure as allegedly required by 38 U.S.C. §§ 1801, *et seq.* He also sought money damages and demanded a jury trial.

This suit followed and, to a degree, paralleled actions in the Superior Court for the

District of Columbia: one to vacate a default judgment suffered by appellant to protect his possessory interest, and the other for the appointment of a conservator to manage appellant's affairs for him.

Recognizing the case as one which, on its face, "cries out for equitable relief," the District Court nevertheless granted appellees' motion for summary judgment and dismissed the complaint. The Court determined from undisputed facts that the appellees offered appellant "substantial assistance and opportunity to avoid foreclosure," and that appellant failed to "avail himself of any of these opportunities." Thereafter, the District Court denied appellant's motion for reconsideration of the dismissal under Rule 60(b), Fed.R.Civ.P. The Court referred to evidence relating to appellant's mental condition which might explain his failure to avail himself of opportunities to avoid foreclosure, and to the fact that, in the interim, the District of Columbia Superior Court had determined to appoint a conservator to manage his affairs for him. But the District Court was not persuaded that the relevant statutes with respect to the Veterans Administration imposed any duty on appellees to intercede to protect appellant on account of his mental condition or need for a conservator. This appeal followed.

We affirm. Although we share the view of the learned District Judge that the case "cries out for equitable relief," and that the lenders or the V.A. did not perform as fully as they might the services which they have represented that they have the power to perform, it is apparent from the undisputed facts that the foreclosure and litigation stemming from it are matters "traditionally relegated to state law" and therefore not actionable here. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Metropolitan Mortgage Fund, Inc., sold the note to defendant Manufacturers Hanover Trust Co., but continued to service the mortgage.

(1979). In order to assure, however, that appellant did not worsen his plight by seeking federal court relief, we are remanding the case with directions that the District Court modify the order of dismissal to make clear that it is entered without prejudice to any claim or continuing effort by appellant or his conservator to vacate the foreclosure or to seek administrative, legislative or other relief.

## I.

The facts are essentially undisputed. Appellant and his wife, who was apparently the family business manager, met their responsibilities for payments on a V.A.-guaranteed mortgage for many years. Then appellant suffered a series of misfortunes: his wife died in 1971, and, in 1976, he lost his job after being the victim of a robbery. Beginning in January, 1975, without apparent cause, he began to omit payments on his mortgage. On two occasions, after several delinquent periods and foreclosure threats, delinquencies were cured. A third delinquency occurred beginning July, 1976, and was not cured, despite repeated notices from the lender to appellant and, as required by law, from the lender to V.A.[2] On February 23, 1977, the lender foreclosed, and the successful bidder acquired the property for $9,000. The property has since changed hands three times, most recently at a price of $37,000.

During all of this process appellant was not represented by counsel. Neither the lender nor V.A. inquired about his competency to manage his affairs nor suggested the appointment of a conservator. And, we assume for present purposes, neither the lender nor the V.A. considered or advised him of the availability of a V.A. procedure, pursuant to 38 U.S.C. § 1816(a), whereby the V.A. may, at its own option, refund the unpaid balance of the obligation to the lender, receive an assignment of the loan

and security, and thus be in a position to secure forebearance by the borrower. Nor did V.A. take any of the other steps, suggested in its own publications, *see infra* at 8–9, which might have helped appellant avoid foreclosure, at least until a conservator could be appointed to regularize his financial affairs.

Proceedings in the local courts present a story, from appellant's perspective, of "too little and too late." The first purchaser of the equity in the property obtained a default judgment in a possessory action against appellant. When this judgment was followed by a writ of eviction in June, 1977, appellant finally obtained counsel. Thereafter, the Superior Court issued an order to maintain appellant's plea of title to the property, on condition that he make regular payments to the Superior Court Clerk. But appellant defaulted on these payments and the protective order was dissolved.

On appeal, the District of Columbia Court of Appeals affirmed the writ of eviction without mention of the need for or the prospect for appointment of a conservator. *Simpson v. Jack Spicer Real Estate, Inc.,* 396 A.2d 212 (D.C.Ct.App.1978). Meanwhile, however, appellant's counsel filed two successive applications to the Superior Court for the appointment of a conservator. When the first application was denied, counsel appealed that order and filed a second application with another judge.

Record evidence of mental illness as a possible cause of appellant's default was not forthcoming until the second effort to obtain appointment of a conservator. At that late date the guardian *ad litem* appointed in this second conservatorship proceeding furnished the Superior Court the professional opinion of two medical officers at Walter Reed Hospital, both of whom concluded that appellant had mental disabilities which made him unable to manage his day-to-day

---

**2.** *See* 38 U.S.C. § 1816 requiring a lender to notify VA of any default within 30 days before a foreclosure and authorizing VA to pay the unpaid balance of the loan and receive an assignment of it from the lender.

affairs on his own.[3] On the basis of this medical and other evidence about appellant's behavior, the guardian *ad litem* advised the Superior Court that appellant "was not able to handle or manage his everyday business affairs." App. G–13. On February 2, 1979, upon consideration of that report, the Superior Court found that appellant, "by reason of advanced age, and mental weakness not amounting to unsoundness of mind, is unable to properly care for his property and person" and appointed a conservator of his estate.[4] Nevertheless, neither the appellant nor the conservator has succeeded so far in obtaining any local court relief for appellant.

## II.

### A.

Appellant claims that V.A., as well as the mortgage companies, should have been aware of his plight and were obligated to assist him as part of their duty to service V.A. insured loans adequately and to exercise reasonable efforts to avoid foreclosure. This duty is, appellant argues, generally reflected in the V.A. Act, 38 U.S.C. § 1801, *et seq.*, whose purpose, the Supreme Court has recognized, is "to enable veterans to obtain loans and to obtain them with the least risk of loss upon foreclosure . . . ." *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). Appellant contends that Section 1804(d) of the Act, authorizing V.A. in effect to refuse to generate loans made by a lender who has failed to demonstrate proper ability to service loans adequately, and § 1816(a), as well as the regulations promulgated under the Act, *see* 38 C.F.R. § 36.4300 *et seq.*,[5] reflect the purpose of the Act to minimize the risk of foreclosure. Appellant further contends that the V.A. Lenders' Handbook, V.A. Pamphlet 26–7, the V.A. Manual M26–3, and the V.A. Circular 26–75–8 specifically

**3.** According to one of the doctors, appellant's cognitive abilities, in both verbal and performance areas, are seriously impaired. He would be unable to handle situations requiring problem-solving ability, is unable to analyze and organize situations and to respond appropriately, and has difficulty in areas requiring memory and concentration ability . . . . [I]t is doubtful that he has the capacity to function independently in normal day-to-day living. The pattern of the subject's performance is consistent with that of individuals who are experiencing organic impairment, and are below expectations for a person his age." App. G–10. The other doctor reportedly concluded that appellant "has an aggregate or concurrence of symptoms associated with non-specific brain disease resulting in serious mental impairment as occurs in advanced age . . . [which] process is ongoing and irreversible." Accordingly, the doctor concluded professionally and "[w]ithout qualification" that appellant "needs assistance in managing his property and in conducting his day-to-day affairs." Appendix G–10, 11.

**4.** Affidavits containing this medical evidence were not on the record before the District Court when it granted appellees' motion for summary judgment on August 17, 1978. Counsel subsequently moved for relief from that judgment, presenting the conservatorship record and order of the court below as grounds for modifying or reversing the court's judgment. This motion was denied in February, 1979. Neither counsel nor the conservator has, however, made any effort to reopen the possessory action in Superior Court, even though that action had been before the Superior Court, and reviewed by the D.C. Court of Appeals, without benefit of the evidence which raises serious questions about appellant's mental capacity to manage his affairs at the very time he was failing to make payment on his house loan. *See Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212 (D.C.Ct.App.1978). Nor have the parties briefed or argued here the extent, if any, to which District of Columbia law provides relief from the consequences of improvident transactions or omissions by persons whose capacity is so limited as to require judicial intervention by conservatorship. We, of course, express no opinion on this local issue, except to note that we do not purport to foreclose it.

**5.** For an example of a regulation reflecting this purpose, and cited by appellant, *see* 38 C.F.R. § 36.4318 (stating that "[u]pon receiving a notice of default, . . . the Administrator may within 30 days thereafter require the holder . . . to transfer and assign the loan and the security therefor to the Administrator or to another designated by him upon receipt of payment in full of the balance of the indebtedness . . . .").

implement these broad policy objectives.[6] According to appellant, the statute and regulations, together with these official publications, impose upon V.A. and the appellee mortgage companies mandatory duties to perform particular services for the benefit of a defaulting veteran threatened with foreclosure.[7] Thus, appellant contends that in circumstances like these, V.A. and the lender should, for example, attempt to refund a loan in jeopardy, to advise the veteran to sell or rent his home to protect it from foreclosure, to make advance payments to the veteran, to forbear or extend the terms of the loan, or to exercise authority to take mortgage assignments pursuant to 38 U.S.C. § 1816(a).

### B.

Appellants' case rests upon his contention that failure to service his loan gave him an implied cause of action, both under the statute, and under the due process clause of the constitution.[8] In making this argument, appellant relies heavily upon a factually similar case, in which a district court in California concluded that veteran borrowers may maintain civil actions against private lenders and V.A. in federal court to enforce the so-called "foreclosure avoidance rules" impliedly mandated by the statute and regulations and reflected in the V.A. publications. *Rank v. Cleland*, 460 F.Supp. 920, 926 (C.D.Cal.1978). The California federal court held in that case that V.A. and the lender breached this mandatory statutory duty to take reasonable measures to avoid foreclosure of plaintiff's loan and the V.A. abused its discretion by refusing, without supplying any reasons for its decision, to receive an assignment of plaintiff's loan and refund the lender pursuant to § 1816(a). Appellant urges us to adopt the rationale of the California decision and to reverse and remand to the District Court because it had jurisdiction to enforce mandatory statutory duties breached by appellees and because the entry of the summary judgment below was improper in light of genuine disputes as to material facts.[9]

### C.

Appellees concede that the relevant statute and the implementing regulations, handbook, manual and circular suggest to the V.A. and to lenders a number of procedures to help veteran borrowers to avoid

---

**6.** For example, the V.A. Lenders' Handbook, V.A. Pamphlet 26–7, states that:
> [i]t is the policy of the V.A., consistent with the beneficial nature of the law, to encourage holders to extend all reasonable forbearance in the event a borrower becomes unable to meet the terms of a loan. Its purpose is to help veteran-borrowers retain their homes without prejudicing the holders' rights under their contracts of guaranty or insurance.

Section F.1.b. It further states that:
> it is not expected that holders will institute action to terminate loans until every reasonable effort has been made to arrive at some solution which would permit the borrower to retain his or her home.

Section F.1.c. Moreover, the V.A. Manual M26–3 states that:
> [n]o guaranteed or insured loan should be foreclosed or otherwise terminated unless such action is justified following the performance of adequate and proper loan servicing as reflected in the loan docket.

¶ 2.35, p. 38. Finally, the VA Circular, 26–75–8, emphasizes the importance of forbearance for temporarily unemployed veterans.

**7.** Appellant cites *Pennsylvania v. Lynn*, 501 F.2d 848, 855 (D.C.Cir.1974) (stating that the National Housing Act of 1949 is "not precatory" and that HUD must follow the policies it sets forth); *Rank v. Cleland*, 460 F.Supp. 920 (C.D.Cal.1978) (*see infra* at 10).

**8.** Specifically, appellant claims that, in light of the statutory scheme, he had a constitutional right to a V.A. hearing before V.A. terminated his housing benefits.

**9.** According to appellant, these disputes included, but were not limited to, whether appellant refused to cooperate with the V.A. and private lenders and whether appellant comprehended the form notices that were mailed to him.

In addition, appellant claims the district court abused its discretion when, presented with additional evidence about appellant's competence, it denied a motion to vacate the summary judgment.

foreclosure. Appellees further concede, as indeed they must, that the handbook exhorts lenders to "extend all reasonable forbearance" to delinquent borrowers; *see* Brief for Government Appellees at 7; that the circular, as modified, took note of adverse economic conditions and directed V.A. employees to ameliorate economic difficulties by urging private lenders to perform adequate loan servicing and by counseling veterans with mortgage problems; and that the manual establishes that refunding with assignment to V.A. is permissible when the refunding will be in the best interest of the V.A., the default was not willful, the veteran wants to retain his property, and the veteran is desirous of V.A. assistance.

Appellees do not claim that they have considered all of the options suggested by the implementing publications. They do claim that they have furnished all the notices to, and made all the personal contacts with, the appellant required by statute and that the procedures outlined in the publications are merely suggestions, and cannot be construed as regulations or binding law, enforceable in an implied action such as is before us here.[10] Appellees emphasize that neither 38 U.S.C. § 1804(d), the statutory provision dealing with loan servicing nor the relevant regulations say anything about a mandatory "foreclosure avoidance" duty. Furthermore, they argue, even if the scheme of statute and publications is mandatory, it is not enforceable in a private action by a veteran because there is no statutory provision expressly creating such

a cause of action and appellant has satisfied none of the *Cort v. Ash* criteria for implying one. Finally, appellees respond to appellants' due process argument by pointing out that the foreclosure was accomplished pursuant to District of Columbia statutes whose constitutionality has been recently vindicated by this Court. *See Bryant v. Jefferson Federal Savings & Loan Assn.*, 509 F.2d 511 (D.C.Cir.1974).

### III.

#### A.

■ In the view compelled upon us by *Cort v. Ash* and its progeny, we must conclude, with deference to the federal district court in California, that appellant lacks any express or implied right of action in federal court to enforce duties V.A. and lenders may have pursuant to V.A. publications.[11] *See e. g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The now familiar *Cort v. Ash* factors relevant to implying a private cause of action are: whether appellant belongs to "the class for whose *especial* benefit the statute was enacted;" whether there is any "indication of legislative intent ... to create such a remedy;" whether implying a remedy is "consistent with the underlying purpose of the legislative scheme;" and whether the cause of action is "one traditionally relegated to state law." *Cort v.*

10. To support this contention, appellees cite, *inter alia, Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979) (stating that a regulation, to have the "'force and effect of law,' ... must have certain substantive characteristics and be the product of certain procedural requisites"); *Donovan v. United States*, 433 F.2d 522 (D.C.Cir. 1970), *cert. denied*, 401 U.S. 944, 91 S.Ct. 955, 28 L.Ed.2d 225 (1971) (rejecting the contention that a FAA handbook imposes specific, mandatory duties on the FAA).

11. Because we conclude that appellant does not have an implied right of action, we need not determine definitively whether, and if so to what extent, the Act, corresponding regula-

tions, and V.A. publications create mandatory foreclosure avoidance duties. We do note in passing, however, that *Pennsylvania v. Lynn*, 501 F.2d 848 (D.C.Cir.1974), the case from this Circuit on which appellant relies in this connection, *see supra* at 9 note 7, dealt only with the "narrow question," *id.* at 851, whether the Secretary of HUD has discretion specifically under the housing subsidy statutes and relevant congressional policy declarations to withhold the exercise of authority delegated to him by Congress. It does not deal at all with the purpose of or duties which may be imposed by the Veterans Benefits Act or by an agency's own publications.

*Ash, supra*, 422 U.S. at 78, 95 S.Ct. at 2087. Appellant in this case cannot demonstrate that any specific statute creates a federal right in his favor. He lacks a statutory basis for his action. The V.A. publications on which he relies are not sufficient as the basis for his suit. Nor has appellant cited any statutory language or legislative history which even arguably indicates a "legislative intent" to establish a private right of action in a case such as this. Finally, and most importantly, appellant, represented by able counsel, had, and may possibly still have, "access to state remedies" to set aside the foreclosure which he suffered, remedies which are "traditionally relegated to state law." *Id.* As the Fifth Circuit has noted, "mortgage foreclosure has traditionally been a matter for state courts and state law, and there are state law remedies available to protect mortgagors from unconscionable mortgages." *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977). *See also Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill.1975). Our conclusion that appellant does not satisfy the *Cort v. Ash* criteria reflects our recent expressions of caution about implying federal causes of action where an adequate state remedy exists. *See e. g., District of Columbia v. Schramm*, 631 F.2d 854 at 862–864 (D.C.Cir.1980); *Sacks v. Reynolds Securities, Inc.*, 593 F.2d 1234, 1245 (D.C.Cir.1978).

### B.

■ We also affirm the District Court's denial of appellant's constitutional due process claim. It may well be, as he claims, that V.A. publications led him to expect some greater initiative from both V.A. and the lender to avoid foreclosure. But that expectation is not the specific entitlement which the federal courts have come to protect by requiring hearings and other processes before termination. *Compare, e. g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In essence appellant was entitled to expect that V.A. would guarantee his loan; V.A. did that. And that expectation was plainly conditioned upon appellant's performance of his duty to make payments due on his guaranteed obligation. Appellant was also entitled to expect notice and advice about any default which threatened loss of his equity by foreclosure. Appellees furnished that. But the statute, the publications, or other evidence of V.A. and lender practice, gave appellant no constitutional right to have V.A. and the lender explore his mental condition in search of an explanation of his repeated delinquency, to seek counsel for him or to apply for the appointment of a conservator. Furthermore, as a corollary of *Cort v. Ash, supra*, it follows that the D.C. legal system has afforded process in litigation, not necessarily terminated, *see supra* at 7 note 4. That system has also furnished him with a conservator. It would have been better if appellant had obtained counsel and a conservator sooner, and V.A. could certainly have helped in this respect. But, in our federal system, such service is more a responsibility of the local courts and bar than it is of V.A. or the lenders; no statute or binding V.A. regulation has shifted that responsibility. Accordingly, we hold that appellant's constitutional claim that he was dispossessed of his equity without due process of law is without merit and the District Court's order to this effect is affirmed.

### C.

In light of our disposition of the implied cause of action and the constitutional claim, it is unnecessary for us to resolve whether there are material facts in dispute so as to preclude summary judgment or whether the District Court abused its discretion when it denied appellant's motion to vacate its summary judgment order.

We pause to note, however, that we do not intend this decision to discourage appellant's diligent counsel or his conservator from continuing efforts to win relief in the local courts or through administrative or legislative channels. On reflection, in response to those efforts, the V.A. may well find that it has the power to intervene to protect this veteran borrower from mort-

gage defaults even if it has no judicially-enforceable duty to do so and that it can thereby carry out the general Congressional intent "that veterans' benefits legislation be generously construed . . . ." without being ordered by a court to do so. *See Carter (Middleton) v. Cleland*, 643 F.2d 1 at 9 (D.C.Cir. 1980).

Accordingly, we direct the District Court to modify its order to reflect that it is entered without prejudice to further consideration by the D.C. Court of Appeals and the Superior Court of the decision in *Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212 (D.C.Ct.App.1978), particularly in light of the subsequent D.C. Superior Court decision and order appointing a conservator to manage appellant's affairs, and that the dismissal is without prejudice to any V.A. administrative action or V.A. assistance to efforts by appellant and/or his conservator to obtain relief from the local courts. As modified, this judgment is affirmed.

It is so ordered.