637 A.2d 573

PRUDENTIAL INSURANCE COMPANY OF AMERICA, A NEW JERSEY CORPORATION, PLAINTIFF–RESPONDENT, v. WILLARD JACKSON, DEFENDANT–APPELLANT, AND OLD REPUBLIC INSURANCE COMPANY, HOUSEHOLD FINANCE CORPORATION, GUARDIAN DISCOUNT CORPORATION, C.I.T. FINANCIAL SERVICES INC., A CORP., JERSEY CITY MEDICAL CENTER, FAMILY MEDICAL CENTER, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1993—Decided February 18, 1994.

Before Judges PRESSLER, BROCHIN and KLEINER.

*Gregory G. Diebold* argued the cause for the appellant (*Hudson County Legal Services Corp., Timothy K. Madden,* Director, attorneys; *Mr. Diebold,* of counsel and on the brief).

*Harold N. Kaplan* argued the cause for the respondent (*Federman* and *Phelan,* attorneys; *Mr. Kaplan,* of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.S.C. (temporarily assigned).

Defendant Willard Jackson appeals a foreclosure judgment routinely entered through the Superior Court Foreclosure Unit on July 1, 1993 on behalf of plaintiff Prudential Insurance Company of America. The foreclosure proceedings were initially commenced on June 13, 1991. Defendant filed an answer asserting three separate defenses. On a contested motion, plaintiff obtained an order striking defendant's answer on December 7, 1992. We conclude that the affidavit filed by defendant in response to the motion to strike his answer raised genuine issues of fact which necessitated a plenary hearing. We accordingly are constrained to reverse the entry of the foreclosure judgment, to reinstate the defendant's answer and to remand to the Chancery Division of Hudson County for trial.

The issues posed by defendant's initial answer and in his response to plaintiff's motion to strike raise questions of first impression on the appellate level in this State, although the legal

and factually analogous circumstances have been thoroughly discussed in two previously reported decisions: *Associated East Mortgage Co. v. Young,* 163 *N.J.Super.* 315, 394 *A.*2d 899 (Ch.Div. 1978), and *Heritage Bank, N.A. v. Ruh,* 191 *N.J.Super.* 53, 465 *A.*2d 547 (Ch.Div.1983).

The factual history of this particular mortgage transaction has been gleaned from a review of the pleadings which include certain stipulated facts jointly submitted to the trial court, as well as information argued by counsel on the motion to strike. On December 6, 1968, defendant Willard Jackson and his wife Katherine, who died March 19, 1991,[1] purchased a residence at 126 Wade Street in Jersey City. The entire purchase price of $22,800 was obtained by a mortgage loan granted by the Commercial Mortgage Company and guaranteed by the Veterans Administration (VA)[2] pursuant to 38 *U.S.C.A.* §§ 1801 to 1819 (now codified at 38 *U.S.C.A.* §§ 3701 to 3714). The mortgage bond required monthly payments of principal and interest amortized over a twenty-five year period yielding interest at 6.75 percent per annum plus the payment of one-twelfth of the annual taxes and insurance premiums. The mortgagee was granted the right to pay any installment of any tax, water rent, or other lien levied upon the property and to add any sum thus paid to the mortgage debt to be secured by the mortgage on the real estate. The mortgage was assigned on December 30, 1968 by the Commercial Mortgage Company to the plaintiff.

On January 19, 1990, plaintiff, by its servicing agent Metmor Financial Inc., paid $14,333.25 to the City of Jersey City to satisfy

---

[1] It is unclear in the record on appeal whether defendant's wife died in 1990 or 1991.

[2] In 1991, the Veterans Administration was given cabinet status and was renamed the Department of Veterans Affairs. Department of Veterans Affairs Act, Pub.L. No. 102–83, 105 Stat. 378, 402 (codified as amended at 38 *U.S.C.A.* §§ 301 to 316).

a lien for unpaid water and sewage charges.[3] In February 1990, defendant was informed by plaintiff's servicing agent that he would be required to repay that sum in six monthly installments. When defendant remitted his regular mortgage payment in March 1990, plaintiff did not apply that payment to the principal, interest, taxes and insurance, as was customary, but chose to apply the payment to the outstanding portion of the mortgage debt attributable to the previously satisfied water and sewage debt. Jackson protested this action and ceased paying any further sum. Plaintiff then filed a foreclosure complaint which alleged a default as of March 1, 1990, and asserted that the principal mortgage debt as of February 1, 1990 was $6,480.46 excluding interest, late penalties and any monies paid by plaintiff as advances for taxes and insurance premiums or in satisfaction of the municipal lien, together with interest which had accrued on all sums advanced by plaintiff. The plaintiff also named as defendants six separate judgment creditors holding six docketed judgments against individuals bearing the name "Willard Jackson or Katherine Jackson" or similar names.

Defendant filed a timely answer and asserted three separate defenses: unclean hands, the violation of the duty of fair dealing, and the failure of plaintiff to comply with the statutory and regulatory prerequisites for foreclosure of this VA-insured mortgage. Thereafter, plaintiff filed a motion to strike the answer and for leave to enter a default against defendant, thus permitting the foreclosure proceeding to be processed as if uncontested by the Superior Court Foreclosure Unit for the entry of a foreclosure judgment. The certification of proof as filed indicated the mortgage debt was $24,764.25 as of October 1, 1991. This sum was a computation of the balance on the principal, interest, late charges, taxes, insurance premiums and the advance paid by Metmor Financial to satisfy the water and sewage lien of $14,333.25.

---

[3] The exact amount paid to the City of Jersey City in satisfaction of the water and sewage debt is not clear from the record.

The motion was initially denied without prejudice and was ultimately refiled and postponed for disposition on the same date that the matter was scheduled for trial. Prior to the commencement of trial, after oral argument, the motion was granted, default was entered against the defendant, and thereafter on July 1, 1993, a judgment of foreclosure was executed by the court reflecting a balance due as of that date of $31,476.34.

In support of its position, both before the trial court and on appeal, defendant relies upon *Associated East Mortgage Co. v. Young, supra.* In *Associated,* the mortgagor in a foreclosure proceeding of a residential mortgage approved by the Department of Housing and Urban Development (HUD) pursuant to the National Housing Act, 12 *U.S.C.A.* § 1715(1)(d)(2), filed a counterclaim seeking a declaratory judgment that the foreclosing mortgagee was legally bound to provide the mortgagor with forbearance relief and the recasting of its mortgage. The court noted that pursuant to a series of regulations codified in the Code of Federal Regulations (C.F.R.), 24 C.F.R. § 203.600 *et seq.,* a HUD-approved mortgagee is required to provide special servicing to assist a defaulting mortgagor as a prerequisite to foreclosure. *Id.* at 320–23, 394 *A.*2d 899. Additionally, a mortgagee may be granted and, under specified circumstances, may itself grant special forbearance relief including the suspension or reduction of mortgage payments for a period not to exceed eighteen months. 24 *C.F.R.* § 203.614(a) to (b). *Id.* at 322, 394 *A.*2d 899.

The regulation cited is merely illustrative of the varied types of available forbearance relief, including recasting of the mortgage, available to a HUD-approved mortgagor prior to foreclosure. *Id.* at 321–23, 394 *A.*2d 899. These varied forms of forbearance relief are outlined and detailed in a handbook issued by HUD and provided to lenders servicing HUD-insured home mortgages. *Id.* at 323, 394 *A.*2d 899.

In *Associated,* the court noted that one objective of HUD is aimed at minimizing the possibility of foreclosure by utilizing collection techniques adapted to the individual differences of mort-

gagors and focusing upon the individual and particular circumstances which caused a HUD mortgagor to default. *Id.* at 324, 394 *A.*2d 899. The HUD handbook provides that HUD approval of a mortgagee as a provider of HUD mortgages may be suspended or terminated if the mortgagee utilizes poor servicing techniques in dealing with its mortgagors and, after notification by HUD, fails to correct its servicing deficiencies. *Id.* at 324, 394 *A.*2d 899.

In its thorough analysis of all of the pertinent servicing options of HUD-approved mortgages, the court noted that certain techniques included in the handbook provided to servicing mortgagees had also been specifically incorporated in the C.F.R., while other forbearance techniques found in the handbook were not. *Id.* at 321–28, 394 *A.*2d 899. The court concluded that, "C.F.R. has the effect of statute or law, unlike the *Handbook* which has been held to be merely advisory." *Id.* at 327, 394 *A.*2d 899.

In *Associated,* Judge Kentz analyzed the various regulations and advisory handbook suggestions which were allegedly disregarded by the mortgagee in servicing the defendant Young's mortgage. The court, however, did not conclude that those procedural deficiencies as alleged created an affirmative cause of action in the Youngs to compel compliance with the forbearance techniques. However, the court did conclude that the failure of the mortgagee, Associated, to abide by either the regulations or the handbook advisory suggestions constituted "unclean hands" on the part of the mortgagee which a court of equity will not countenance, and Associated was denied a judgment of foreclosure. *Id.* at 330–31, 394 *A.*2d 899.

As the mortgagor had escrowed its monthly mortgage payments during the course of the litigation, Judge Kentz ordered that the escrow fund be credited to the mortgage account and specifically ordered in part: "If thereafter any delinquency continues on the first mortgage, Associated and the Youngs shall endeavor to establish a mutually agreeable plan to restore the account to a

current status in accordance with the applicable provisions of the ·C.F.R. and the *Handbook.*" *Id.* at 331, 394 *A.*2d 899.

In the case *sub judice,* the plaintiff Prudential urged the trial court to adopt what it contended was a contrary result as set forth in *Heritage Bank, N.A. v. Ruh, supra. Heritage Bank* was an action to foreclose a mortgage insured by the Federal Housing Administration (FHA) and administered under the rules and regulations of HUD. The mortgagor filed an answer contending that the mortgagee Heritage Bank "failed to follow regulations and procedures as promulgated by HUD pertaining to foreclosure proceedings," resulting in the loss of an opportunity to recast the mortgage or other relief which would have averted foreclosure. *Id.* at 55, 465 *A.*2d 547. In response, Heritage Bank contended that the HUD regulations and procedures outlined in the handbook "are discretionary, not mandatory, and are not a legal prerequisite to foreclosure." *Id.* at 59, 465 *A.*2d 547.

Judge Deighan, relying upon an analysis in 29 *N.J. Practice, Law of Mortgages* § 176, at 60 (Roger A. Cunningham & Saul Tischler) (Supp.1981), thoroughly analyzed the HUD regulations pertaining to foreclosure. *Id.* at 59–66, 465 *A.*2d 547. The court specifically concluded:

> It is therefore held that the HUD Regulations and procedures in the HUD Handbook are discretionary, not mandatory, and are not a legal prerequisite to foreclosure which is determined by state law. Further, a private cause of action may not be implied against a mortgagee for violation of the HUD regulations and the procedures outlined in the HUD Handbook.

[*Id.* at 66, 465 *A.*2d 547.]

The court, however, fully recognized, based upon the decision in *Associated, supra,* 163 *N.J.Super.* at 330–31, 394 *A.*2d 899, and predicated upon the decisions in *Brown v. Lynn,* 385 *F.Supp.* 986 (N.D.Ill.1974) (*Brown I* ), and *Brown v. Lynn,* 392 *F.Supp.* 559 (N.D.Ill.1975) (*Brown II* ), that our courts may exercise equity power in refusing to grant foreclosures when mortgagees have flagrantly disregarded the forbearance or recasting measures

outlined in the HUD handbook. *Heritage Bank, supra,* 191 *N.J.Super.* at 66–68, 465 *A.*2d 547.

This very same concept was also specifically recognized in *Simpson v. Cleland,* 640 *F.*2d 1354 (D.C.Cir.1981), where a mortgagor filed a complaint seeking an order declaring the foreclosure sale of a VA-guaranteed mortgage void, vacating it, and restoring the *status quo,* on the ground that the mortgagee had failed to make reasonable efforts to avoid foreclosure in accordance with the procedures set forth in Veterans Administration publications provided to mortgagees servicing loans guaranteed by the Veterans Administration. Finding that neither the lenders nor the VA fully performed the services which they might have performed in order to avert foreclosure, the court noted that the case "cries out for equitable relief." *Id.* at 1355. It nonetheless held that foreclosure issues are matters "traditionally relegated to state law" and therefore refused to recognize an affirmative cause of action on behalf of the defaulting mortgagor. *Id.* at 1360.

We are satisfied that the principles stated by *Associated, supra,* and *Heritage Bank, supra,* are the same. Both held that while the mortgagee's violation of HUD regulations and guidelines respecting the averting of foreclosure did not create an affirmative cause of action in favor of the mortgagor, such violations could nevertheless justify withholding the equitable remedy of foreclosure from the mortgagee. The disparate results in the two cases rested on factual differences, not legal differences. Thus, in *Associated,* the court concluded that the mortgagee had acted as an "imprudent and callous lender" in servicing the mortgagor's loan and was denied the aid of equity by foreclosure. 163 *N.J.Super.* at 331, 394 *A.*2d 899. In *Heritage Bank,* the court looked at the particular alleged improprieties of the mortgagee in failing to employ the recommended procedures in the HUD handbook, evaluated the conduct of the mortgagor Ruh as developed at trial, and concluded, "[I]t is defendant who produced the situation and created the attendant hardship." 191 *N.J.Super.* at 72, 465 *A.*2d 547. The court then declined to exercise its equitable powers to

provide the relief requested by the mortgagor and in fact concluded:

> The doctrine of clean hands has its logical justification only in consideration of good conscience and natural justice. There are cases in which a court of equity, fulfilling the reasons and objects for its existence may, in furtherance of a natural justice, aid one who is comparatively more innocent. 3 *Pomeroy, Equity Jurisprudence* (5 ed. 194–) § 942; *Laurino v. Laurino,* 28 *N.J.Super.* 119, 124, 100 *A.*2d 301 (App.Div.1953).

[*Id.* 191 *N.J.Super.* at 72–73, 465 *A.*2d 547.]

In the case *sub judice,* in response to the motion to strike defendant's answer, Jackson filed an affidavit which asserts in part the following:

> 8. At no time did I ever agree with plaintiff or its servicer to pay the water lien over a six month period. The repayment of this lien was determined on a purely unilateral basis. I had no discussion with plaintiff or its servicer concerning this default, nor were any meetings or discussions held regarding ways in which I could save my house. No representative of plaintiff or its servicer ever suggested to me that the new monthly mortgage figure could be adjusted to reflect an amount I was able to afford. No one ever attempted to counsel me on ways to avoid foreclosure.[4]
>
> 9. I made several calls to plaintiff's servicer to try to arrange a solution to this problem. Several appointments were made with representatives of Metmer [sic] Financial Services in 1990 at my residence, but their representatives did not keep the appointments.
>
> 10. I never received the notice of default or notice of intent to foreclose which were allegedly sent to the Veteran's Administration.
>
> 11. I ask the Court to give me the opportunity to save my house and resume paying a realistic amount on my mortgage.

At the oral argument on the motion, the trial judge ruled:

> The court does not agree with Judge Kentz's opinion in, what is it, Associated East Mortgage Company v. Young. That opinion is not binding on this court, becuase [sic] it was rendered by a court of concurrent, not superior, but concurrent jurisdiction.

---

[4] Paragraph 8 refers to the fact that in February 1990 Prudential, through its servicing agent, informed Jackson that his monthly payments would be increased from $385 per month to $1,966.76 per month to pay off the monies advanced by Prudential to satisfy the Jersey City water and sewage lien.

On the other hand, the court does agree with the reasoning of Judge Degan [sic] in the Heritage Bank case,[5] indicating that noncompliance by a mortgagee with HUD regulations does not create a cause of action in the mortgagor, but rather, solely relates to a cause of action, if any, between the insuring agency and the mortgagee, which will relate to the liability of the insuring agency to make payment on the insurance.

That's the opinion of the court, which means this; that the defenses set forth are deemed to be insufficient as a matter of law to delay or prevent the foreclosure, and accordingly, defendant's answer is suppressed.

Now, this matter being uncontested, it is properly to be sent to the foreclosure unit of the Superior Court for further and final proceedings.

That is the judgment of the court.

The court's interpretation of the decision in *Heritage Bank, N.A. v. Ruh, supra,* was clearly incorrect as that decision specifically recognizes that a court of equity may declare a foreclosing mortgagee's conduct violative of the concept of "clean hands" so as to deny it the equitable remedy of foreclosure. *See id.* at 66–73, 465 *A.2d* 547. Whether that remedy is appropriate must be determined after a plenary hearing in which a full exploration of the conduct of the mortgagee who seeks foreclosure in disregard of the recommendation of the Veterans Administration to avoid foreclosure may be balanced against the action or failure to act of the defaulting mortgagor who seeks to avoid the effect of foreclosure. The motion to strike the defendant's answer, *R.* 4:6–5, was in this instance treated akin to a motion for summary judgment, *R.* 4:46–2, which must be denied if the pleadings, including affidavits, demonstrate the existence of a genuine question of material fact. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.2d* 24 (1954). The answer as filed, and particularly the separate defenses, when read in conjunction with defendant's affidavit filed in response to plaintiff's motion to strike, was sufficient to deny plaintiff's motion. Clearly in this case where Jackson had reduced a mortgage debt of $22,800 to a principal balance in February 1, 1990 of $6,480.46, and where by affidavit he asserted substantial servicing deficiencies on the part

---

5 The chancery court failed to note that *Heritage Bank, N.A. v. Ruh, supra,* was also not binding as that decision was also by a court of concurrent jurisdiction.

of the mortgagee, there were sufficient issues of material fact raised to require that the motion either be denied, or that the decision on the motion be withheld until all of the testimony which would have been elicited at trial could have been considered.

The motion to strike was improvidently granted. The judgment of foreclosure is reversed and the entire matter is remanded to the Chancery Division for trial as a contested foreclosure proceeding.