G.M. FEDORCHAK AND ASSOCIATES, INC., Plaintiff-Appellant, v. CHICAGO TITLE LAND TRUST COMPANY, as Trustee U/T No. 1105980, *et al.*, Defendants-Appellees.

Third District    No. 3—04—0088

Opinion filed January 7, 2005.—Rehearing denied February 15, 2005.

Thomas A. Appel, of Appel & Appel, Ltd., of Lansing, for appellant.

No brief filed for appellees.

JUSTICE SCHMIDT delivered the opinion of the court:

The plaintiff, G.M. Fedorchak & Associates, Inc. (Fedorchak), contracted with defendant Ground Zero Entertainment Complex, Inc. (Ground Zero), to provide architectural designs for a development project. Ground Zero leased the real estate for the project from defendant Chicago Title Land Trust Company (Chicago Title). When Ground Zero failed to pay its bills for the architectural services, Fedorchak filed a mechanic's lien against Ground Zero and Chicago Title. Fedorchak later filed a seven-count complaint against Ground Zero, Chicago Title, and other defendants. In count II of the complaint, Fedorchak sought to foreclose the mechanic's lien. The trial court granted Ground Zero's motion under section 2—619 of the Code of Civil Procedure to dismiss counts II and III with prejudice. 735 ILCS 5/2—619 (West 2002). Later, the trial court granted Fedorchak's motion to voluntarily dismiss the remaining five counts of the complaint. On appeal, Fedorchak argues that the trial court erred in dismissing count II. We affirm.

## BACKGROUND

Fedorchak is an architectural firm located in Indiana. Ground Zero is an Illinois corporation. During the proceedings in the Illinois trial court, Ground Zero filed for bankruptcy. The record supplied to this court consists of the common law record from the Illinois trial court and documents from Ground Zero's federal bankruptcy proceedings.

On February 23, 2000, Ground Zero and Fedorchak contracted for Fedorchak to provide architectural services concerning the construction of a nightclub, theater, restaurant, and sports bar on real estate in Mokena. According to Fedorchak, Ground Zero represented that it owned the real estate. Fedorchak and Ground Zero later entered into a second contract for Fedorchak to supply construction management services for the project.

Fedorchak subsequently learned that Ground Zero did not own

the property but, rather, that defendant Chicago Title held the property in trust. Ground Zero leased the property from Chicago Title.

After Ground Zero failed to pay its bills to the architectural firm, Fedorchak filed a mechanic's lien against Ground Zero and Chicago Title on August 28, 2000. Fedorchak sought reimbursement for its architectural services. Fedórchak filed another mechanic's lien against the same defendants for reimbursement of its construction management services.

Fedorchak filed its seven-count complaint on September 18, 2000. In count II, Fedorchak sought to foreclose the mechanic's lien for architectural services. This appeal only concerns count II.

Fedorchak's complaint was accompanied by invoices it had sent to Ground Zero for its architectural services. The invoices concerned architectural work Fedorchak had done for Ground Zero from February 23 to August 7, 2000.

On October 23, 2000, Ground Zero filed a section 2—619(a)(2) motion to dismiss Fedorchak's complaint. In its motion, Ground Zero alleged that Fedorchak was not registered and its president, Gerald M. Fedorchak, Jr. (Gerald Jr.), was not licensed to practice architecture in Illinois at the time the parties entered into the contracts. Ground Zero contended that under *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320, 657 N.E.2d 1065 (1995), both contracts were void. Ground Zero reasoned that under *Kaplan* and section 2—619(a)(2), Fedorchak lacked the legal capacity to sue Ground Zero on any of the seven counts of the complaint.

Fedorchak filed its response to Ground Zero's motion on November 15, 2000. In the response, Fedorchak admitted that the architectural firm still was not registered to practice architecture in Illinois.

Fedorchak attached Gerald Jr.'s affidavit to its response. In his affidavit, Gerald Jr. stated that he and his father, Gerald M. Fedorchak, Sr. (Gerald Sr.), are the two principals of the architectural firm. Gerald Jr. submitted that at the time the contracts were formed, Gerald Sr. was licensed to practice architecture in Illinois. Gerald Jr. said that he applied for his Illinois architecture license on March 3, 2000, and subsequently received it. In his affidavit, Gerald Jr. stated, "The drawings prepared for the Ground Zero project were prepared by myself and my father, and bear my father's name and seal." In its response, Fedorchak argued that the holding of *Kaplan* was inapplicable to count II of its complaint.

Ground Zero filed a reply to Fedorchak's response on November 22, 2000. In its reply, Ground Zero contended that although Gerald Sr. was licensed in Illinois, his license was inactive at the time of the contract's formation. Ground Zero attached a page from the Illinois

Department of Professional Regulation website. The page was not dated, but the text of the page contained the statement, "page format modified 09/28/00." The page showed Gerald Sr.'s license status as "Inactive," but did not indicate when the license had become inactive. According to this document, Gerald Sr.'s license had been issued on "03/15/1965." Gerald Jr.'s license was issued on "05/31/2000."

On December 8, 2000, the trial court partially granted Ground Zero's section 2—619 motion by dismissing counts II and III with prejudice. The court's order stated that the dismissal was "in accordance with the holding in *Kaplan.*" On February 6, 2001, the court denied Fedorchak's motion to reconsider the dismissal of count II.

On June 21, 2001, Ground Zero filed for bankruptcy in federal court. By statute (11 U.S.C. § 362(a)(1) (2000)), Ground Zero's bankruptcy filing created an automatic stay of all proceedings concerning claims against Ground Zero.

Fedorchak moved the trial court to voluntarily dismiss the remaining counts of its complaint on July 18, 2001. On July 23, 2001, the trial court granted Fedorchak's motion.

On January 7, 2004, Fedorchak filed a motion in the bankruptcy court for relief from the automatic stay with regard to count II. The bankruptcy court granted the motion on January 20, 2004. Fedorchak filed its notice of appeal regarding count II with the Illinois trial court on January 30, 2004.

## ANALYSIS

Initially, we note that none of the defendants has filed an appellee's brief. We nevertheless reach the merits of the appeal pursuant to the guidelines expressed in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

## I. Jurisdiction

■ Fedorchak asserts that we have jurisdiction over this case despite Fedorchak filing its notice of appeal nearly 2½ years after the trial court's final judgment.

An appellate court has jurisdiction over an appeal only if the notice of appeal is timely filed under Supreme Court Rule 303 (155 Ill. 2d R. 303). *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 675 N.E.2d 1362 (1997). Rule 303(a) states that a notice of appeal must be filed within 30 days of a final judgment. 155 Ill. 2d R. 303(a).

In this case, even though the notice of appeal was not filed within 30 days of the final judgment, we have jurisdiction over this appeal for the reasons that follow. When Ground Zero petitioned for bankruptcy, it obtained an automatic stay of all proceedings against it. See 11 U.S.C. § 362(a)(1) (2000). The stay was in place at the time Fedorchak

moved to voluntarily dismiss the remaining counts of its complaint. This court's research has found no case holding that such a stay applies to a creditor's motion to voluntarily dismiss claims against a debtor in bankruptcy. Thus, the stay did not bar the trial court from ruling on Fedorchak's motion to voluntarily dismiss the remaining counts of its complaint.

Once the trial court dismissed the remaining counts in Fedorchak's complaint on July 23, 2001, that order was final and appealable. See 155 Ill. 2d R. 304. Ordinarily, Fedorchak should have filed its notice of appeal within 30 days of that final judgment. However, the automatic stay barred Fedorchak from appealing any claim against Ground Zero until the bankruptcy court granted relief from the stay. See *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 308 Ill. App. 3d 33, 719 N.E.2d 143 (1999).

The bankruptcy court lifted the stay with regard to count II on January 20, 2004. On January 30, 2004, Fedorchak filed its notice of appeal, which was within 30 days following the lifting of the stay. Fedorchak could not file its notice of appeal before the stay was lifted without violating the stay. See *Cook County*, 308 Ill. App. 3d 33, 719 N.E.2d 143. We rule that, under these circumstances, Fedorchak's notice of appeal was timely filed. Therefore, we have jurisdiction over this appeal.

## II. Motion to Dismiss

Fedorchak submits that the trial court erred in granting that portion of Ground Zero's section 2—619(a)(2) motion that dismissed count II of Fedorchak's complaint.

Under section 2—619(a)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/1—101 *et seq.* (West 2002)), a cause of action may be dismissed if the plaintiff does not have the legal capacity to sue the defendant. 735 ILCS 5/2—619(a)(2) (West 2002). Dismissal pursuant to section 2—619 is warranted only where it is clear that no set of facts can be proved that would entitle the plaintiff to recover. *Thornton v. Shah*, 333 Ill. App. 3d 1011, 777 N.E.2d 396 (2002). We review the granting of a section 2—619 motion *de novo*. *Thornton*, 333 Ill. App. 3d 1011, 777 N.E.2d 396.

In the present case, the issue is whether Fedorchak had the legal capacity to sue Ground Zero and Chicago Title to foreclose its mechanic's lien for architectural services. Under the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2002)), an architect may obtain a mechanic's lien upon real property for the amount due for architectural services. 770 ILCS 60/1 (West 2002). If the architect is not paid by virtue of the lien, the architect may sue to foreclose the lien. 770 ILCS 60/9 (West 2002).

The legal capacity to foreclose a mechanic's lien depends upon the validity of the lien. *Pascal P. Paddock, Inc. v. Glennon*, 32 Ill. 2d 51, 203 N.E.2d 421 (1964). The lien, in turn, "must be based upon a valid contract, and in its absence the lien is unenforceable." *Paddock*, 32 Ill. 2d at 53, 203 N.E.2d at 422. "[T]he contract's validity should be judged as of the date of its making ***." *Paddock*, 32 Ill. 2d at 53, 203 N.E.2d at 422.

Thus, in order to determine if Fedorchak had the legal capacity to sue Ground Zero and Chicago Title to foreclose the mechanic's lien for architectural services, we must determine if the mechanic's lien was valid. To determine if the mechanic's lien was valid, we must determine if the contract for architectural services was valid on the date of its making.

■ In the present case, the trial court ruled that the mechanic's lien was invalid because the contract for architectural services was not valid under *Kaplan*, 276 Ill. App. 3d 320, 657 N.E.2d 1065. In *Kaplan*, the architectural firm was not registered in Illinois, but the firm's sole owner was a licensed architect. The *Kaplan* court noted that the Illinois Architecture Practice Act of 1989 (Act) (225 ILCS 305/1 *et seq.* (West 2002)) made registration of architectural firms mandatory. Furthermore, the Act provides criminal penalties for violations of architectural firm registration and individual architect licensing requirements. See 225 ILCS 305/36(a) (West 2002). The *Kaplan* court reasoned, therefore, that the contract was void because allowing an architectural firm to provide architectural services without being registered was contrary to the public policy behind the Act.

We disagree with the holding of the *Kaplan* court. Instead, we agree with and adopt the rationale of *Hattis Associates, Inc. v. Metro Sports, Inc.*, 34 Ill. App. 3d 125, 339 N.E.2d 270 (1975).

In *Hattis*, the vice-president and managing agent of an architectural firm was licensed, but the firm was not registered. The *Hattis* court ruled that the contract underlying a mechanic's lien was valid because the architectural work was done under the supervision of a licensed architect. *Hattis*, 34 Ill. App. 3d 125, 339 N.E.2d 270.

The *Hattis* court noted that the purpose of the Act is not to protect architects but rather to protect the public from possible damage from the work of incompetent and unlicensed architects. *Hattis*, 34 Ill. App. 3d 125, 339 N.E.2d 270. Furthermore, the Act states the following regarding its public policy:

> "The practice of architecture in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is *** a matter of public interest and concern that the practice of architec-

ture *** merit and receive the confidence of the public, and that only qualified persons be authorized to practice architecture in the State of Illinois." 225 ILCS 305/2 (West 2002).

In the instant case, Ground Zero's section 2—619 motion asserted the affirmative defense that Fedorchak could not foreclose the mechanic's lien because the contract upon which it was based was void. Ground Zero contended that the contract was invalid because Fedorchak was not registered as a firm and Gerald Jr. was not licensed as an individual architect in Illinois at the time of the contract's formation. In its reply, Ground Zero additionally pointed out that Gerald Sr.'s license was inactive at the time of the contract's formation.

Fedorchak admitted that it was not registered in Illinois as an architectural firm during any time relevant to this case. The contract was formed on February 23, 2000. In his affidavit, Gerald Jr. stated that the architectural designs were done both by Gerald Jr. and Gerald Sr. The invoices show that the designs were drawn from February 23 to August 7, 2000. Gerald Jr. was not licensed at the time of the contract's formation, but became licensed on May 31, 2000, in the midst of the production of the designs.

Gerald Sr. was licensed in Illinois at the time of the contract's formation. However, his license was inactive.

Section 17 of the Act states that "[a]ny licensed architect whose license is in an inactive status shall not practice architecture in the State of Illinois." 225 ILCS 305/17 (West 2002). In this case, unlike the situation in *Hattis*, Gerald Sr. was licensed in Illinois, but was unauthorized to practice architecture in Illinois because his license was inactive. Therefore, he also was not authorized to supervise the drafting of the architectural designs. See *Hattis*, 34 Ill. App. 3d 125, 339 N.E.2d 270.

At the time of the contract's formation, the Fedorchak firm was not registered, Gerald Jr. was not licensed, and Gerald Sr. held an inactive license whereby he was not authorized to practice architecture in Illinois. Fedorchak, therefore, had not satisfied the purpose of the Act. See 225 ILCS 305/2 (West 2002); *Hattis*, 34 Ill. App. 3d 125, 339 N.E.2d 270.

Applying *Hattis*, the contract in this case would have been valid if either Gerald Sr. or Gerald Jr. had been authorized to practice architecture in Illinois at the time of the contract's formation, even though their firm was not registered in Illinois. However, because neither architect was authorized to practice architecture in Illinois at the time of its formation, the contract for architectural services was void. See *Paddock*, 32 Ill. 2d 51, 203 N.E.2d 421. Because the contract was void, the mechanic's lien was not valid. See *Paddock*, 32 Ill. 2d 51,

203 N.E.2d 421. As a result of the invalid mechanic's lien, Fedorchak lacked the legal capacity to sue Ground Zero and Chicago Title to foreclose the mechanic's lien for architectural services. See 735 ILCS 5/2—619(a)(2) (West 2002).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Will County circuit court dismissing count II of Fedorchak's complaint.

Affirmed.

BARRY and O'BRIEN, JJ., concur.