JERRY ROBERTS, Indiv. and d/b/a Roberts Cleaning, Maintenance and More, Plaintiff-Appellee and Counterdefendant-Appellee, v. DALE ADKINS *et al.*, Defendants-Appellants and Counterplaintiffs-Appellants.

Third District   No. 3—09—0187

Opinion filed January 7, 2010.

Diane B. Diestler, of Blandinsville, for appellants.

Lisa M. Scalf, of Lucie & Scalf, of Macomb, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Jerry Roberts, performed work on a home owned by defendants, Dale and Wanda Adkins (together, Adkins). When Adkins refused to pay Roberts, he recorded a mechanic's lien on their real property. Roberts filed suit to foreclose on the mechanic's lien. Adkins filed counterclaims and raised the Home Repair and Remodeling Act (Act) (815 ILCS 513/1 *et seq.* (West 2006)) as an affirmative defense. Following a bench trial, the trial court ruled in favor of Roberts and awarded him attorney fees. Adkins appeal, arguing that (1) the Act precludes Roberts from foreclosing on his mechanic's lien, (2) Roberts is not entitled to attorney fees, and (3) they were entitled to relief on their counterclaims. We affirm in part, reverse in part, and remand.

After completing home repair work on Adkins' home, Roberts recorded a claim for lien pursuant to the Illinois Mechanics Lien Act (Lien Act) (770 ILCS 60/0.01 *et seq.* (West 2006)). The claim asserted that he "performed labor and provided materials" to Adkins and that Adkins owed him $2,194.34. Roberts then filed a complaint to foreclose on his mechanic's lien and sought attorney fees pursuant to the Lien Act (770 ILCS 60/17(b) (West 2006)).

Adkins filed a counterclaim, alleging that Roberts (1) breached his oral agreement by causing damage to their deck, and (2) violated the Consumer Fraud and Deceptive Business Practices Act (Consumer

Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)) by (a) representing himself as a registered contractor, and (b) violating the Act. Adkins also asserted two affirmative defenses, arguing that (1) there was no meeting of the minds and, thus, no valid contract between the parties, and (2) Roberts violated the Act by failing to provide a consumer rights brochure or written agreement.

At trial, Roberts testified that he was hired by Adkins to paint a fence and strip and stain a deck. He verbally told them that the job would cost $750. He never provided Adkins with a written bid, work order or agreement.

Roberts painted Adkins' fence on August 27, 2007, and August 28, 2007. When he arrived at Adkins' home on the morning of August 29, 2007, Wanda began complaining about a prior contractor's work on her screened-in porch. She asked Roberts' opinion, and he told her he could correct the problems. He told her that he would "get a price together for her." She responded, "No, no. We need to get this done. Just go ahead and get started on it." He explained to her that this was "a large cosmetic deal" that would cost her more than having the deck enclosed in the first place. He never told her how much the extra work on the screened-in porch would cost. He said that he could initially look at a project "at the get-go" and determine if it will cost $100 or $1,000.

Roberts testified that he completed the deck refinishing on September 2, 2007. When he left that day, he did not see any problems with the deck. Wanda called him, and he "went right over" to Adkins' home sometime between September 2 and September 19, 2007. At that time, he saw that the deck "looked bad." He told Wanda he would fix it for free. When he went back on September 19 to fix it, he saw signs telling him not to do any more work.

On September 24, 2007, Roberts sent Adkins a letter, stating that they still owed him $2,194.34. He billed them approximately $2,000 for the "extra work" on the screened-in porch. He did not bill them for his work on the deck. When Adkins refused to pay him the amount indicated in the letter, he filed a mechanic's lien.

Roberts testified that he was registered as a contractor in the City of Macomb from June 9, 2006, to June 9, 2007. Registering with the city requires that he fill out a form and provide a copy of his insurance. He was unaware that his registration had lapsed on June 9, 2007, and he continued to represent that he was "registered" after that date.

William Hopper, Roberts' brother-in-law, testified that on August 29, 2007, he went to Adkins' residence to help Roberts. When he arrived, Wanda told Roberts that she was dissatisfied with some of the

work other contractors had done. She asked Roberts if he could fix the problems. Roberts told her that he could prepare a bid for her. Wanda responded, "No ***. I want it fixed now." Roberts said, "No, I need to write a bid for it," and she said, "No, go ahead and do the work." William assisted Roberts in performing the extra projects. Lisa Roberts, plaintiff's wife, also testified that Roberts performed extra work for Adkins in addition to what had originally been agreed to, including reframing screens and hanging a new door on the screened-in porch.

Wanda testified that she saw an advertisement in the local newspaper that represented Roberts as "registered and insured." After seeing that, Wanda called Roberts and asked him to provide her a bid to paint a fence, paint post frames on her closed-in porch and strip, stain and seal a deck. Roberts verbally quoted a total price of $750 for the work.

Roberts began working at her home on August 27, 2007. Soon thereafter, he began complaining about work that had been done by other contractors and offered to make improvements. Wanda responded, "[J]ust get the deck finished." She said that she could not possibly have had any discussions with Roberts on the morning of August 29, 2007, because she was out of town. She denied ever authorizing Roberts to perform work in addition to painting the fence and posts and resealing the deck, except installing one soffit, which she purchased and Roberts installed in 30 to 45 minutes.

On August 30, 2007, Wanda paid Roberts $600. She planned to pay him the remaining $150 when he completed the work. Roberts completed his work on Adkins' residence on September 2, 2007. At that time, the deck was "all gummy" and "blotchy." Wanda was dissatisfied with how it looked. She called Roberts, but he did not return her phone calls and did not return to her home until September 19, 2007.

Before Roberts returned, Wanda spoke to Craig Budde, an employee from Sherwin Williams, who told her that nothing could be done to correct the deck until the spring, when the weather was warmer. After hearing that, she posted signs on her home instructing Roberts not to do any more work. When Roberts saw her signs, "he got very nasty." Soon thereafter, he sent her a letter, stating that she still owed him $2,194.34. Attached to the letter was an itemized list of 17 tasks that Roberts performed at Adkins' home between August 27 and September 2, 2007. She disputed that Roberts performed any of the work itemized in that letter, other than painting the fence and post on the porch and installing the soffit. She stated, "all of the other things he's claiming, he did not do."

The next spring, Wanda contacted other contractors to fix the deck. They informed her that the deck had not been properly sealed; after exposure to cold weather, it peeled, popped, warped and cracked. She was told that she would have to either replace the entire deck or replace certain boards and then paint the entire deck.

Craig Budde testified that he examined Adkins' deck in September of 2007. He observed that the stain had "not taken evenly throughout the boards." He believed that the problem was caused by an improper application of products.

Fred Smith, a contractor, testified that he went to Adkins' home and provided Adkins with a bid to remove, replace and stain all of the boards on Adkins' deck. He admitted it would be less expensive to remove and replace only the damaged boards but said that the new boards would "not look the same" as the old boards. It was Adkins' choice to replace all the boards "in order for it to look the same."

At the conclusion of the trial, the trial court ruled in favor of Roberts, finding that (1) his complaint to foreclose mechanic's lien was supported by the evidence, (2) "the Home Repair and Remodeling Act did not apply at the outset of the parties' oral contractual agreement"; and (3) Adkins' counterclaims were not supported by the evidence. The trial court entered judgment in favor of Roberts for $2,194.34, as well as attorney fees and court costs.

Adkins filed a posttrial motion, requesting that the judgment in favor of Roberts be vacated. The trial court denied the motion, "specifically find[ing] that the Home Repair Act does not apply."

## ANALYSIS

### I. THE ACT

In 2000, the Illinois General Assembly created the Act because "the business of home repair and remodeling is a matter affecting the public interest." 815 ILCS 513/5 (West 2006). The purpose of the Act is "to safeguard the life, health, property and public welfare of [Illinois's] citizens" through "improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers" in order to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices." 815 ILCS 513/5 (West 2006).

To effectuate its purpose, the Act imposes certain requirements on individuals and businesses involved in home repair and remodeling. See 815 ILCS 513/20, 30 (West 2006). Section 20 of the Act requires that those engaged in the business of home repair and remodeling provide to their customers a copy of a pamphlet that explains consumers' rights prior to the execution of any home repair or remodeling

contract. 815 ILCS 513/20(a), (b) (West 2006). If the contract is for over $1,000, the homeowner must sign a form acknowledging that he received a copy of the pamphlet, and the contractor must retain the form. 815 ILCS 513/20(a) (West 2006). Additionally, section 30 of the Act requires that contractors obtain a signed written contract or work order for work over $1,000. 815 ILCS 513/30 (West 2006).

Section 35 addresses enforcement of the Act. According to section 35(b), "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35(b) (West 2006).

### A. Applicability of the Act

Adkins argue the Act required that Roberts provide them with a written contract because the final bill was for work totaling well over $1,000.

When construing a statute, a court's primary objective is to ascertain and give effect to the legislative intent. *In re Estate of Gagliardo*, 391 Ill. App. 3d 343, 346, 908 N.E.2d 1056, 1059 (2009). To determine the legislature's intent, we look to the language of the statute and give the language its plain, commonly understood meaning. *Gagliardo*, 391 Ill. App. 3d at 346, 908 N.E.2d at 1059. Statutory construction presents a question of law that is reviewed *de novo*. *Gagliardo*, 391 Ill. App. 3d at 346, 908 N.E.2d at 1059.

Section 30 of the Act provides that "[i]t is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (West 2006). Two courts have expressly analyzed this language. In *K. Miller Construction Co. v. McGinnis*, 394 Ill. App. 3d 248, 253, 913 N.E.2d 1147, 1152 (2009), the First District said that "the plain language of the Act *** bars recovery for work that exceeds $1,000 on a residence without a written contract or work order." And, this court in *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 550, 831 N.E.2d 1169, 1173 (2005), stated that "[t]he language of the Act clearly and unambiguously requires anyone engaged in the business of home repair and remodeling to obtain a signed contract before initiating work that will exceed $1,000 in cost."

Here, there is no dispute that Roberts was "engaged in the business of home repairs and remodeling." It is also undisputed that Roberts did not provide Adkins a written contract at any time. Roberts asserts that he was not required to provide a written contract or work order because when he originally started the project, the anticipated cost was only $750. We disagree.

■ In *Slepian*, the contractor argued that it was impossible to provide a written estimate of the total costs because the homeowners were "constantly changing the scope and therefore the cost of the project." *Slepian*, 358 Ill. App. 3d at 549, 831 N.E.2d at 1172. We held that plaintiff was not excused from the written contract requirement, stating:

> "[T]here is no exception under the Act for *** projects that become unpredictable in scope and nature. To the contrary, the Act appears designed to help define some reasonable boundaries for a home improvement project. The Act requires an estimate of 'reasonable particularity.' Nothing in the Act precludes a contractor from providing an updated estimate or work order as the circumstances may warrant. In any case, this court cannot add exceptions, limitations, or conditions to the statute that the legislature did not express." *Slepian*, 358 Ill. App. 3d at 549, 831 N.E.2d at 1172-73.

Roberts is asking us to read an exception into the Act for projects that are originally anticipated not to exceed $1,000 but later exceed that amount. We refuse to do so. In this case, Roberts' original bid for work on Adkins' home was $750. However, just three days into the project, Wanda requested that Roberts complete another large project, which he knew would bring the total cost of his work well over $1,000. When Roberts became aware that the anticipated costs would exceed $1,000, he was required to obtain a written contract. See 815 ILCS 513/30 (West 2006). To interpret the statute otherwise would allow a contractor to circumvent and render meaningless the objectives of the statute. See *Slepian*, 358 Ill. App. 3d at 549, 831 N.E.2d at 1172. Thus, the trial court erred in concluding the Act did not apply.

### B. Effect of the Act

Roberts argues that his noncompliance with the Act does not preclude him from recovering on his mechanic's lien claim.

The legal capacity to foreclose a mechanic's lien depends on the validity of the lien. *G.M. Fedorchak & Associates, Inc. v. Chicago Title Land Trust Co.*, 355 Ill. App. 3d 428, 433, 822 N.E.2d 905, 909 (2005). The lien must be based on a valid contract; if it is not, the lien is unenforceable. *G.M. Fedorchak*, 355 Ill. App. 3d at 433, 822 N.E.2d at 909. When a contract does not comply with the Act, it is invalid and cannot form the basis of a breach of contract action or an action to foreclose a mechanic's lien. See *McGinnis*, 394 Ill. App. 3d at 254, 913 N.E.2d at 1152; *Smith v. Bogard*, 377 Ill. App. 3d 842, 848, 879 N.E.2d 543, 548 (2007); *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

In *McGinnis*, the homeowners orally agreed to pay Miller, a contractor, $187,000 for remodeling work in 2004. In 2005, the project expanded significantly, and the homeowners allegedly agreed to pay

over $500,000. In 2006, Miller completed the project. The homeowners paid Miller $177,580.33 but refused to pay any more. Miller filed a complaint against the homeowners for foreclosure of a mechanic's lien, breach of contract and *quantum meruit*. The homeowners filed a motion to dismiss, arguing that Miller could not recover because he never provided a written contract as required by the Act. The trial court granted the motion to dismiss. The appellate court affirmed the trial court's dismissal of Miller's foreclosure and breach of contract claims, stating, "In the absence of a written contract or work order, Miller's time and materials oral contract is unenforceable under the Act." *McGinnis*, 394 Ill. App. 3d at 254, 913 N.E.2d at 1152.

In *Bogard*, a contractor provided homeowners with an oral estimate of "$20,000 or less" for a room addition but did not provide a written contract or a consumer rights pamphlet. The homeowners filed a motion to dismiss the contractor's breach of contract action against them, claiming that the contractor was precluded from recovery. The trial court agreed, and the appellate court affirmed the trial court's decision, stating: "We find the Act applies to Smith, that Smith violated several provisions of the Act, and those violations support the dismissal of his breach-of-contract claim." *Bogard*, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548.

In *Slepian*, a contractor filed a complaint to foreclose a mechanic's lien against homeowners, alleging that they failed to pay for labor and materials the contractor provided under an oral contract. The homeowners raised an affirmative defense, alleging that because the contractor violated the Act, the oral contract for services was void, and, therefore, could not form the basis of recovery under a mechanic's lien. The trial court found in favor of the contractor. This court disagreed, stating: "The trial court erred in concluding the Act did not apply in the instant case, and the court should now hear any claims that were dismissed on that basis." *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173. We reversed and remanded the trial court's decision. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

■ Here, Roberts violated the Act by failing to (1) provide defendant with a consumer rights pamphlet and (2) obtain a signed written contract from Adkins prior to performing work of over $1,000. See 815 ILCS 513/20, 30 (West 2006). Because the agreement between Roberts and Adkins was never reduced to writing and signed by both parties, there is no valid contract that could form the basis for Roberts' mechanic's lien. Since Roberts' mechanic's lien is not based on a valid contract, it is unenforceable, and the trial court had no authority to enter judgment on the mechanic's lien claim. See *G.M. Fedorchak*, 355 Ill. App. 3d at 434-35, 822 N.E.2d at 910.

## II. ATTORNEY FEES

A trial court's decision to award attorney fees is a matter within its discretion and will not be disturbed absent an abuse of that discretion. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173. A court's award of attorney fees will be reversed if the party is not entitled to receive them under the Lien Act. See *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 184-85, 703 N.E.2d 114, 120-21 (1998).

### A. Plaintiff's Fees

■ Adkins argue that the trial court erred in granting Roberts attorney fees under the Lien Act. Section 17(b) of the Lien Act allows a "lien claimant who ha[s] perfected or proven his or her claim" to be awarded attorney fees in some cases. 770 ILCS 60/17(b) (West 2006). Here, after finding in Roberts' favor on his mechanic's lien claim, the trial court awarded Roberts' attorney fees pursuant to section 17(b) of the Lien Act. Since Roberts cannot foreclose his mechanic's lien, he is not entitled to attorney fees. See 770 ILCS 60/17(b) (West 2006). Therefore, the trial court's award must be reversed.

### B. Defendants' Fees

Adkins contend that as the prevailing parties, they are entitled to attorney fees under the Lien Act. We disagree. The Lien Act allows homeowners to recover attorney fees when they have successfully defended a lien action only when a lien claimant has brought an action "without just cause or right." 770 ILCS 60/17(c) (West 2006). An action is "without just cause or right" if it "is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 60/17(d) (West 2006).

Roberts brought his lien action based on an oral agreement with Adkins. Roberts successfully argued in the trial court that the Act does not apply because his original bid was for less than $1,000. While we disagree with Roberts' contention that the Act does not apply to him, we find that he presented a good-faith argument that the Act was inapplicable. Thus, Adkins are not entitled to attorney fees.

## III. DEFENDANTS' COUNTERCLAIMS

Finally, defendants argue that the trial court erred in ruling against them on their breach of contract and consumer fraud counterclaims.

### A. Breach of Contract

To succeed on a claim for breach of contract, a plaintiff must plead and prove (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) dam-

ages as a result of the breach. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1014, 876 N.E.2d 218, 226 (2007). We will reverse a trial court's ruling if it is contrary to the manifest weight of the evidence. See *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542, 703 N.E.2d 978, 984 (1998).

Here, Adkins hired Roberts to strip, stain and seal their deck. According to Wanda, the deck was "all gummy" and "blotchy" after Roberts completed his work. Roberts himself admitted that he did a "bad" job on the deck and offered to correct the problem, but when he returned to Adkins' home it was too late in the season to do the work. Once the deck was exposed to cold weather, it "peeled, popped, warped and cracked." An employee of Sherwin Williams, where Adkins purchased the deck products, testified that the problems with the deck were caused by Roberts' "improper application of products."

Roberts' improper application of stain and sealer caused certain boards in the deck to be damaged beyond repair. The undisputed testimony established that the deck could be repaired by (1) replacing and restaining only the damaged boards, or (2) replacing the entire deck. Adkins' witness admitted that replacing damaged boards would be less expensive than total replacement of the deck.

■ Based on the evidence and testimony set forth above, Adkins established all of the elements necessary for their breach of contract claim. See *Kopley Group*, 376 Ill. App. 3d at 1014, 876 N.E.2d at 226. First, Roberts entered into an agreement to strip, stain and seal Adkins' deck. Second, Adkins agreed to pay Roberts for the work. Third, Roberts breached the agreement by performing the deck work in a deficient manner, thereby causing permanent damage to the deck. Finally, Adkins were damaged as a result of Roberts' breach and must pay to have their deck repaired.

Accordingly, we find the trial court's ruling on Adkins' counterclaim is against the manifest weight of the evidence. Adkins established all of the elements necessary for their breach of contract claim. Thus, we reverse the trial court's decision denying Adkins' breach of contract counterclaim and remand to the trial court to determine damages.

## B. Consumer Fraud Act

To prevail on a claim under the Consumer Fraud Act, a plaintiff must plead and prove (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the unfair or deceptive practice; (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce; and (4) the unfair or deceptive practice proximately caused plaintiff's injury.

*Galvan v. Northwestern Memorial Hospital*, 382 Ill. App. 3d 259, 263-64, 888 N.E.2d 529, 535 (2008).

█ Adkins claim that Roberts acted unfairly and deceptively by (1) holding himself out as "registered," and (2) violating the Act. Though these actions may constitute deceptive practices under the Consumer Fraud Act (see *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 845, 869 N.E.2d 964, 971 (2007) (company falsely representing that it is insured is deceptive); 815 ILCS 513/35(b) (West 2006) (violation of the Act "shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act")), Adkins did not show that either of these acts injured them.

Roberts testified that registration with the City of Macomb merely requires him to fill out a form and provide proof of insurance. His failure to register did not cause injury to Adkins. Additionally, Roberts' failure to provide Adkins with a consumer rights brochure and written agreement did not cause them damages. Adkins' damages were caused by Roberts' deficient work. The trial court properly found in Roberts' favor on Adkins' consumer fraud counterclaim.

## CONCLUSION

The judgment of the circuit court of McDonough County is affirmed in part, reversed in part and remanded.

Affirmed in part and reversed in part; cause remanded.

O'BRIEN and WRIGHT, JJ., concur.