No. 3-08-0237

Filed January 14, 2010 CORRECTION

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| DAVID W. FANDEL, Individually and d/b/a Fandel Construction, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit Bureau County, Illinois, |
| Plaintiff-Appellant, | ) ) | No. 07-CH-91 |
| v. | ) ) | |
| TIFFANY ALLEN, | ) ) | Honorable Cornelius J. Hollerich, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE McDADE delivered the opinion of the court:

Plaintiff, David Fandel, doing business as Fandel Construction, performed construction work for defendant, Tiffany Allen, on defendant's home. After the project was complete, plaintiff recorded a "claim for lien" and commenced suit to foreclose the lien after defendant stopped payment on the check she tendered in payment of the services. Plaintiff now appeals from the trial court's granting of summary judgment in favor of defendant. We reverse and remand.

FACTS

In July 2007, defendant contacted plaintiff and requested that plaintiff submit a bid to replace the roof on her home. Plaintiff inspected the roof. The day after his inspection, plaintiff

tendered a written, itemized work order to defendant for her consideration. Plaintiff did not provide defendant with a copy of a consumer rights brochure prepared by the Attorney General's office. The work order specified the work to be done, the materials to be used, and the total cost of $9,581 to complete the work. The work order was not signed by defendant. Instead, defendant merely advised plaintiff to proceed in accordance with the itemized work order. The job was completed August 1, 2007, and defendant tendered a check to plaintiff pursuant to the work order plus $100 for a change defendant requested, thereby totaling $9,681. Defendant subsequently stopped payment on the check.

Plaintiff filed a "claim for a mechanic's lien" in the recorder's office of Bureau County. On October 17, 2007, plaintiff commenced a suit to foreclose the lien. Defendant filed a response and a motion for summary judgment arguing that plaintiff's failure to comply with sections 20(a) and 30 of the Home Repair and Remodeling Act (Home Repair Act) (815 ILCS 513/1 *et seq.* (West 2006)) barred him from asserting a lien upon her property. Upon hearing argument, the trial court granted defendant's motion, thus denying plaintiff any payment for the work he had done.

ANALYSIS

Plaintiff appeals the trial court's order granting defendant's motion for summary judgment. The sole issue in this appeal is whether plaintiff's failure to comply with sections 20(a) and 30 of the Home Repair Act (815 ILCS 513/1 *et seq.* (West 2006)) bars him from asserting a mechanics' lien upon defendant's property.

Principles of statutory construction dictate that the language of a statute be given its plain and ordinary meaning. *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1058-

2

59, 726 N.E.2d 621, 625 (2000). When the language of the statute is clear and unambiguous, the court should not add exceptions, limitations, or conditions that the legislature did not express. *First Bank*, 311 Ill. App. 3d at 1059, 726 N.E.2d at 625. A court should interpret a statute as a whole so that no term is rendered superfluous or meaningless. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270, 695 N.E.2d 481, 485 (1998). The standard of review for both statutory construction and summary judgment is *de novo*. *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 976, 700 N.E.2d 181, 187 (1998); *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171, 793 N.E.2d 736, 739 (2003).

We begin by setting out the pertinent sections of the Home Repair Act in their entirety. Section 20(a) of the Home Repair Act states:

> "§20. Consumer rights brochure. (a) For any contract over $1,000, any person engaging in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract. The consumer shall sign and date an acknowledgment form entitled 'Consumer Rights Acknowledgment Form' that states: 'I, the homeowner, have received from the contractor a copy of the pamphlet entitled " 'Home Repair: Know Your Consumer Rights.'" The contractor or his or her representative shall also sign and date the acknowledgment form, which includes the name and address of the home repair and remodeling business." 815 ILCS

3

513/20 (West 2006).

Section 30 of the Home Repair Act states:

"§30.  Unlawful Acts.  It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 [citations] of this Act.  This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts, or practices that may be unfair or deceptive."  815 ILCS 513/30 (West 2006).

Section 5 of the HRRA sets forth the policy statement of the General Assembly in enacting the Home Repair Act.  It states:

"§5. Policy.  It is the public policy of this State that in order to safeguard the life, health, property, and public welfare of its citizens, the business of home repair and remodeling is a matter affecting the public interest.  The General Assembly recognizes that improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers will increase consumer confidence, reduce the likelihood of disputes, and promote fair and

4

honest practices in that business in this State." 815 ILCS 513/5

(West 2006).

It, thus, appears to us that the legislative purpose is to empower the Attorney General and State's

Attorney to correct a potential harmful practice, not to deny an honest and competent workman

the fair value of his work nor to give a homeowner a valuable benefit without paying for it.

In the present case it is undisputed that the written work order provided by plaintiff to

defendant was not signed by defendant. It is also undisputed that plaintiff did not provide

defendant with a copy of the consumer rights brochure. Plaintiff acknowledges that when he

began work for defendant, the anticipated costs were over $1,000. Plaintiff, however, asserts that

because the Home Repair Act does not provide individual homeowners with a private right of

action to enforce violations of the Home Repair Act, defendant is not entitled to judgment as a

matter of law. Plaintiff also alleges that the trial court's holding improperly implies a judicial

repeal of the Mechanics Lien Act (Lien Act) (770 ILCS 60/0.01 *et seq.* (West 2006)).[1] At the

time this case was argued, there were only two Illinois appellate opinions relevant to our

analysis: a previous decision by this court, *Central Illinois Electrical Services, L.L.C. v. Slepian*,

358 Ill. App. 3d 545, 831 N.E.2d 1169 (2005), and the Fourth District's decision in *Smith v.*

*Bogard,* 377 Ill. App. 3d 842, 879 N.E.2d 543 (2007).[2] Since that time the First District decided

---

[1] While defendant argues plaintiff waived this contention, we note that the waiver rule is

binding on the parties but not on this court. *Catholic Charities of the Archdiocese of Chicago v.*

*Thorpe*, 318 Ill. App. 3d 304, 311, 741 N.E.2d 651, 655 (2000).

[2] We are aware of our supreme court's holding in *MD Electrical Contractors, Inc. v.*

*Abrams,* 228 Ill. 2d 281, 888 N.E.2d 54 (2008). This holding, however, is not relevant to our

5

*K. Miller Construction Co. Inc. v. McGinnis*, 394 Ill. App. 3d 248, 913 N.E.2d 1147 (2009). While we are aware that the parties have not had the opportunity to brief and orally argue the impact of the *Miller* holding, we discuss the case briefly in footnotes 6 and 7.

In *Slepian*, the plaintiff, Central Illinois Electrical Services (CIES), entered into an oral contract with the homeowners to provide electrical work as part of a remodeling project. Upon completion of the project, the Slepians failed to pay CIES. CIES subsequently sued to foreclose a mechanics' lien on the Slepians' property and, in addition, alleged claims for unjust enrichment and *quantum meruit*. In response, the Slepians alleged that CIES had violated the HRRA by failing to provide a written contract. Thus, the Slepians argued that the oral contract was void and therefore could not be the basis of recovery under a mechanic's lien. After a bench trial, the trial court found in CIES's favor with respect to the mechanic's lien, dismissed CIES's additional counts as moot, and denied, on the merits, all of the Slepians' claims pursuant to the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10(a) (West 2006)). On appeal, we discussed CIES's claim that the Home Repair Act did not apply to it because it was a successor contractor without a clearly defined project against which to itemize

---

analysis in that it dealt solely with the question of whether the Home Repair Act applied to subcontractors. The court concluded that the Home Repair Act does not apply to subcontractors who, by virtue of their working for a general contractor, did not make "representations" to a homeowner, did not negotiate with a homeowner, did not present written contracts to a homeowner, and were not in a position to accept counter offers. *Abrams*, 228 Ill. 2d at 291-92, 888 N.E.2d at 60-61. The court found the remaining issue of whether subcontractors are able to recover in *quantum meruit* was forfeited. *Abrams*, 228 Ill. 2d at 299-300, 888 N.E.2d at 65.

6

expenses and reversed that portion of the trial court's order that relied upon the finding that the Home Repair Act was not applicable. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173. Specifically, we stated:

> "The language of the Act clearly and unambiguously requires anyone engaged in the business of home repair and remodeling to obtain a signed contract before initiating work that will exceed $1,000 in cost. The trial court erred in concluding the Act did not apply in the instant case, and the court should now hear any claims that were dismissed on that basis. Thus, *to the extent that the trial court's rulings relied upon a finding that the Act was not applicable*, this cause is reversed and remanded for proceedings consistent with this opinion." (Emphasis added.) *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at1173.

In addition, we affirmed the trial court's dismissal of the Slepians' CFA counts acknowledging that the trial court was the proper entity to determine that the charges for the work were not unreasonable. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at1173. We also determined that the outcome of the proceedings would not have been different had the Slepians been allowed to proceed on their Consumer Fraud Act claims. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at1173.

We believe the holding in *Slepian* is very narrow. Specifically, the *Slepian* court: (1) held that the Home Repair Act applies to CIES regardless of the fact that it is a successor contractor,[3]

---

[3] While we offer no position on this issue, we recognize that an argument can be made

7

(2) affirmed the dismissal, on the merits, of the Slepians Consumer Fraud Act counts, and (3) reversed and remanded the matter so that the trial court could hear any challenges under the Home Repair Act. See *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173. We further believe that the limited nature of *Slepian* is reinforced by Justice Barry's dissent, which concentrates entirely on whether CIES, as a successor contractor, knew enough to comply with the Home Repair Act or whether the Slepians were in the class of consumers the Home Repair Act was intended to protect. See *Slepian*, 358 Ill. App. 3d at 551-54, 831 N.E.2d at 1175-77. (Barry, J., dissenting). Ultimately, he would have found the Home Repair Act inapplicable. It is for these reasons that we find *Slepian* both factually and legally distinguishable from the present case.

The *Bogard* court and the dissent, however, read *Slepian* much more broadly, apparently finding the implicit creation of the use of the Home Repair Act as an affirmative defense. Inasmuch as there was no discussion of rights of action or affirmative defenses or other uses of the HRRA, we would suggest such a reading is incorrect.

In *Bogard*, the plaintiff, Dan Smith Building Services (Smith), entered into an oral contract with the homeowners to build a living-room addition. The Bogards refused to pay the last installment, in the amount of $10,515.85 claimed due for the work performed. Smith filed a

_____

that the holding in *Abrams*, which held that the Home Repair Act did not apply to subcontractors, overruled our previous holding in *Slepian* that the Home Repair Act applies to CIES regardless of the fact that it is a successor contractor. The resolution of this question would appear to rest in whether CIES made "representations" to the Slepians, negotiated with the Slepians, presented written contracts to the Slepians, or was in a position to accept counteroffers. See *Abrams*, 228 Ill. 2d at 291-92, 888 N.E.2d at 60-61.

8

breach of contract claim and, in addition, alleged claims for unjust enrichment and *quantum meruit*. The Bogards filed a motion to dismiss claiming that Smith violated the Home Repair Act by not securing a written contract prior to initiating construction and failing to provide them with the consumer rights brochure. They claimed that these violations precluded Smith from recovery. Upon hearing argument, the trial court granted the Bogards' motion in its entirety, finding that because Smith had failed to comply with the Home Repair Act, he was precluded from recovery on his breach of contract claim. The court further found that because Smith was unable to recover under an action at law, he was precluded from recovery under any equitable theory as well because such a recovery would defeat the entire purpose of the Home Repair Act and the public policy behind it.

On appeal, Smith argued that a disputed issue of whether the Home Repair Act applies to him remains, and even if the HRRA does apply to him, he is not precluded from recovery under the theories of unjust enrichment and/or *quantum meruit*. The Fourth District rejected Smith's claim that he was merely a subcontractor and thus not required to comply with the Home Repair Act. *Bogard*, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548. The court also rejected Smith's claim that he is entitled to recovery under the theories of unjust enrichment and/or *quantum meruit*. *Bogard*, 377 Ill. App. 3d at 848, 879 N.E.2d at 548. Erroneously relying upon our decision in *Slepian*, the court stated:

> "Because Smith is obligated to comply with the provisions
> of the Act, and because he failed to do so, he is precluded from
> recovering any amounts he claims due for work performed.
> Allowing a contractor a method of recovery when he has breached

9

certain provisions of the Act would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy. [Citations.]

Based on the record before us, we conclude the trial court did not err in granting the Bogards' motion to dismiss because we find that an affirmative matter (Smith's violation of the Act) defeated Smith's claim for recovery." *Bogard*, 377 Ill. App. 3d at 848, 879 N.E.2d at 548.

With the above authority in mind, we now turn to plaintiff's claim that because the Home Repair Act does not provide individual homeowners with a private right of action to enforce violations of the Home Repair Act, defendant is not entitled to judgment as a matter of law. Plaintiff argues that violations of the Home Repair Act alone do not affirmatively preclude a contractor from asserting a mechanics' lien upon a homeowner's property. Instead, plaintiff asserts that the homeowner must prove that "the violation, through Section 10(a) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10(a) (West 2006)), caused her to suffer actual damages as a proximate result of the deficiency." We agree.

At the outset, we note that the Home Repair Act does not contain any language that explicitly or implicitly provides that a violation of the Home Repair Act may be enforced by consumers in a private cause of action. Rather, section 35 states that the Attorney General or the State's Attorney "may bring an action in the name of the people of this State against any person to restrain and prevent any pattern or practice violation of this Act." 815 ILCS 513/35 (West 2006). Section 35(b) also states that "[a]ll remedies, penalties, and authority granted" to the

10

Attorney General or the State's Attorney "by the Consumer Fraud and Deceptive Business Practices Act [(815 ILCS 505/1 *et seq.* (West 2006))] shall be available to him or her for enforcement of this Act." 815 ILCS 513/35 (West 2006). Moreover, "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35 (West 2006).

Here on appeal, defendant does not assert that she was unaware of her consumer rights at the time she instructed plaintiff to begin work on her roof. Instead, she has merely alleged that plaintiff's procedural errors in not securing her signature on the written contract prior to initiating construction and failing to provide her with the consumer rights brochure bar him from asserting a mechanics' lien upon her property. In the present case, plaintiff asserted a mechanics' lien against defendant's property under the Lien Act. The purpose of the Lien Act is "to require a person with an interest in real property to pay for improvements or benefits which have been induced or encouraged by his or her own conduct." *Leveyfilm, Inc. v. Cosmopolitan Bank & Trust,* 274 Ill. App. 3d 348, 352, 653 N.E.2d 875, 877 (1995). Section 1 of the Lien Act permits a lien upon premises where the value or the condition of the property has been increased by reason of the furnishing of labor and materials. 770 ILCS 60/1 (West 2006). Specifically, section 1(a) states in pertinent part:

> "Any person who shall by any contract or contracts, express
> or implied, or partly expressed or implied, with the owner of a lot
> or tract of land, or with one whom the owner has authorized or
> knowingly permitted to contract, to improve the lot or tract of land
> or for the purpose of improving the tract of land, or to manage a

11

structure under construction thereon, is known under this Act as a contractor and has a lien upon the whole of such lot or tract of land and upon adjoining or adjacent lots or tracts of land of such owner ***." 770 ILCS 60/1(a) (West 2006).

As seen above, the Lien Act makes no distinction between oral and written contracts. Moreover, Illinois law provides that a contractor's right to a mechanics' lien under the Lien Act derives from the contractor's performance of the contract. *Leveyfilm, Inc. v. Cosmopolitan Bank & Trust*, 274 Ill. App. 3d 348, 354, 653 N.E.2d 875, 879 (1995). Thus, the pertinent question in the present case regarding whether plaintiff can assert a lien against defendant's property revolves around the validity of the agreement between the two parties and the plaintiff's performance of that agreement. The legal capacity to foreclose a mechanics' lien depends upon the validity of the lien. *G.M. Fedorchak & Associates, Inc. v. Chicago Title Land Trust Co.*, 355 Ill. App. 3d 428, 433, 822 N.E.2d 905, 909 (2005). The lien, in turn, must be based upon a valid contract, and in its absence, the lien is unenforceable. *G.M. Fedorchak*, 355 Ill. App. 3d at 433 822 N.E.2d at 909.

In the present case, defendant requests that we find the agreement she entered into with plaintiff invalid because plaintiff failed to comply with sections 20(a) and 30 of the Home Repair Act. While plaintiff's failure to comply with these sections does constitute an unlawful violation under the Home Repair Act, we find that this unlawful violation does not act to automatically invalidate the agreement between the parties. In coming to this conclusion, we note once again that the Home Repair Act is void of any language which serves to invalidate the parties' agreement when the contractor fails to secure a written contract or fails to provide the

12

homeowner with a consumer rights brochure. Instead, the Home Repair Act merely provides that these procedural errors, along with the other procedural errors contained within its provisions, constitute unlawful violations. 815 ILCS 513/30 (West 2006).

These unlawful violations, however, do not act to invalidate an otherwise enforceable agreement. We have previously held that " '[u]nless a bargain necessarily involves an illegal act, it is not unenforceable, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain.' " *Amoco Oil Co. v. Toppert*, 56 Ill. App. 3d 595, 597, 371 N.E.2d 1294, 1296 (1978), quoting 6 Williston, Contracts §1767, at 5018 (rev. ed. 1938). The First District stated this principle more broadly:

> " '*** "[W]here a contract could have been performed in a legal manner as well as in an illegal manner, it will not be declared void because it may have been performed in an illegal manner, since bad motives are never to be imputed to any man where fair and honest intentions are sufficient to account for his conduct. The rule has been stated to be that if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner ***." ' " *Mani Electrical Contractors v. Kioutas*, 243 Ill. App. 3d 662, 666, 611 N.E.2d 1167, 1170 (1993), quoting *Meissner v. Caravello*, 4 Ill. App. 2d 428, 431-32, 124 N.E.2d 615, 616-17 (1955), quoting 12 Am. Jur., Contracts §153, at 647.

Here, the parties entered into an oral agreement to repair defendant's roof. Specifically,

13

defendant sought out plaintiff and asked him to submit a bid to replace the roof. Plaintiff tendered a written, itemized work order to defendant for her consideration. Defendant advised plaintiff to proceed in accordance with the itemized work order. Plaintiff completed the job and defendant tendered a check to defendant for the amount stated in the work order plus $100 for a change defendant had requested, thereby totaling $9,681. Defendant subsequently stopped payment on the check. While plaintiff's failure to provide defendant with a copy of the consumer rights brochure and secure a written contract does constitute an unlawful violation under the Home Repair Act, the underlying bargain to repair defendant's roof did not provide for or require any violation of law. Thus, we find that the underlying agreement between the parties was valid and plaintiff's procedural violations relative to that agreement do not bar recovery.

Defendant is incorrect in asserting that such an interpretation renders sections 20(a) and 30 of the Home Repair Act meaningless. While the Home Repair Act does not prohibit a contractor from recovery in the event a contractor fails to secure a written contract or fails to provide the homeowner with the consumer rights brochure, it does exact penalties for these violations. Specifically, the Home Repair Act states that the Attorney General may seek penalties against the contractor in case of violation. 815 ILCS 513/35 (West 2006). More importantly for our consideration, however, the Home Repair Act plainly and unambiguously provides that "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35 (West 2006). Section 10(a) of the Consumer Fraud Act provides defendant with the right to bring an action against plaintiff for any actual damages she suffered as a result of any violation of the Consumer Fraud Act. 815 ILCS 505/10(a) (West 2006). It is through section 10(a) of the Consumer Fraud Act that plaintiff can

14

recover for any actual damages she suffered as a result of plaintiff's failure to comply with sections 20(a) and 30 of the Home Repair Act.[4] This court, in *Slepian*, has previously recognized this fact by affirming the trial court's dismissal of plainitff's Consumer Fraud Act claims on the merits, not as a matter of procedural inapplicability. *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at1173.

It is clear based on a reading of both the Home Repair Act and the Consumer Fraud Act that the legislature did not intend to provide homeowners with a private right of action under the Home Repair Act. Nor do we believe the legislature intended to allow homeowners to use the Home Repair Act as an affirmative defense to mechanics' liens.[5] To hold otherwise would result

---

[4] While some may argue that our position would require homeowners to engage in dual litigation in that they would have to come back to court after a mechanics' lien has been secured against their property, this reasoning is simply incorrect in that it ignores the fact that trial courts can hear both a contractor's mechanics' lien claim and a homeowner's Consumer Fraud Act claim in the same hearing. We note that this type of combined hearing is exactly what occurred in *Slepian*. See *Slepian*, 358 Ill. App. 3d at 550, 831 N.E.2d at1173. Moreover, the Home Repair Act is void of any condition restricting the time a homeowner can bring a Consumer Fraud Act action. Instead, the Home Repair Act simply provides that "any violation of this Act shall constitute a violation of the Consumer Fraud and Deceptive Business Practices Act." 815 ILCS 513/35 (West 2006).

[5] The authority relied upon by the dissent which illustrates situations where courts have allowed a defendant to use a plaintiff's violation of other acts, such as the Motor Vehicle Retail Installment Sales Act (Sales Act) (815 ILCS 375/1 *et seq*. (West 2006)), as an affirmative

15

in a judicial repeal of the Lien Act. In coming to this conclusion, we reject the holding announced in *Bogard*, as we believe it was incorrectly decided.[6] We have already stated that we believe the holding in *Slepian* is extremely narrow and both factually and legally distinguishable. However, to the extent that one accepts the broad interpretation of *Slepian*, as both the *Bogard* court and the dissent does, we would find that *Slepian* was incorrectly decided.

Moreover, we reject the dissent's contention that our holding here on appeal "deviate[s] from the rationale" in our previous decision in *Route 50 Auto Sales Inc. v. Muncy*, 331 Ill. App. 3d 515, 771 N.E.2d 635 (2002). Slip op. at 6. Initially, we note that our decision in *Muncy* did not even deal with the Home Repair Act. Instead, the defendants in *Muncy* filed a motion to dismiss plaintiff's complaint, asserting that plaintiff was precluded from enforcing a contract because it did not meet the requirements of the Sales Act (815 ILCS 375/1 *et seq.* (West 2006)).

---

defense against a plaintiff's claim even though the acts limit enforcement to the Attorney General or State's Attorney is distinguishable and simply has no bearing on this appeal. These cases are all distinguishable on the grounds that they deal with entirely different factual scenarios, and with entirely different bodies of law.

[6] We note that on August 10, 2009, the First District in *Miller* denied a builder's claims for breach of contract and lien foreclosure due to the builder's failure to comply with section 30 of the Home Repair Act. *Miller*, 394 Ill. App. 3d at 253-54, 913 N.E.2d at 1152. For the reasons stated above, we disagree with this holding. The *Miller* court held, however, that the equitable remedy of *quantum meruit* remained available to the builder. *Miller*, 394 Ill. App. 3d at 265, 913 N.E.2d at 1161. We offer no opinion on this specific issue, as we have already found that a valid contract exists in the present case.

It is on this basis that we find *Muncy* factually distinguishable from the instant case. We would, however, also note that while we believe the holding in *Muncy* is inapplicable, the court specifically held:

> "[F]ailure to comply with the provisions of the [Sales Act] does not render the contract void or unenforceable. [Citation.] The remedy for noncompliance with the Sales Act is limited to the penalties provided in the statute." *Muncy*, 331 Ill. App. 3d at 517, 771 N.E.2d at 637.

The quote above clearly illustrates that *Muncy* does not stand for the proposition that the Sales Act can be used to void an existing legal contract. Instead, the contract remains valid, but the noncomplying party is subject to the penalties provided in the statute. *Muncy*, 331 Ill. App. 3d at 517, 771 N.E.2d at 637. To this extent, we believe the *Muncy* court's interpretation of the Sales Act is consistent with our interpretation of the Home Repair Act.

Based upon a review of the record, it appears that the failure to provide defendant with a copy of the consumer rights brochure and to secure a signature on the itemized work order were oversights on the part of plaintiff grounded in ignorance of the statute. The public welfare which these sections were calculated to protect was not injured and defendant received her new roof. All elements for a valid contract existed, including offer, acceptance and consideration. None of these terms provided for or required a violation of law. Thus, we find that the oral agreement between the parties does constitute a valid oral contract under Illinois law. Consequently, we hold that plaintiff's subsequent performance of that agreement creates a right to a mechanics' lien under the Lien Act. See *Leveyfilm*, 274 Ill. App. 3d at 354, 653 N.E.2d at 879. Because the

17

Home Repair Act is void of any language which serves to invalidate the parties' agreement, defendant cannot now use the Home Repair Act to bar plaintiff from asserting this lien.[7] However, if defendant has suffered any actual damages as a result of plaintiff's unlawful violations, the statute has created a cause of action for her under section 10(a) of the Consumer Fraud Act. See 815 ILCS 513/35 (West 2006); 815 ILCS 505/10(a) (West 2006). Moreover, the Attorney General or the State's Attorney is free to seek penalties against plaintiff for his unlawful

_____

[7] The use of "void" in section 15.1(c) of the Home Repair Act does not act to void a valid contract. Section 15.1 deals with situations where the contractor presents the homeowner with a written offer containing provisions whereby the homeowner agrees to submit all disputes to arbitration and waive her right to a trial by jury. See 815 ILCS 513/15.1 (West 2006). Section 15.1(b) requires the contractor to give the homeowner the "option of accepting or rejecting both the arbitration clause and the jury trial waiver clause." 815 ILCS 513/15.1(b) (West 2006). It also requires that the homeowner sign "her name and write the word 'accept' or 'reject' in the margin next to each *** clause." 815 ILCS 513/15.1(b) (West 2006). Section 15.1(c) merely states: "Failure to advise a consumer of the presence of the binding arbitration clause or the jury trial waiver clause or to secure the necessary acceptance, rejection or consumer signature *as provided in this Section shall render null and void each clause that has not been accepted or rejected and signed by the consumer.*" (Emphasis added.) 815 ILCS 513/15.1 (West 2006). In using section 15.1 to reject the builder's claim that section 30 does not bar oral contracts, the *Miller* court has misread and incorrectly applied section 15.1. Had the legislature intended to allow a contractor's "unlawful violation" to be used to void a valid contract, it could have included such language in section 30, as it did in section 15.1.

18

violations.

For the foregoing reasons, we reverse the judgment of the Bureau County circuit court and remand the matter for further proceedings.

Reversed and remanded.

Filed January 14, 2010 (2nd correction)

No. 3--08--0237, <u>Fandel v. Tiffany Allen</u>

JUSTICE SCHMIDT, specially concurring:

I concur, but write separately to point out some additional reasons as to why I believe that Justice McDade's construction of the Home Repair Act is the correct one.

Nowhere does the Home Repair Act say that a contract that does not strictly comply with the statute is void or otherwise unenforceable. The section of the statute titled "Enforcement" contains no such language. 815 ILCS 513/35 (West 2006). It does not state that one who fails to get a signature on a written work order and/or hand out a consumer rights brochure cannot collect for his or her work. It does say that the Attorney General may take action against the contractor and it also points out that the homeowner has an action under the Consumer Fraud Act. See 815 ILCS 513/35 (West 2006). This statute is in derogation of the common law and must be strictly construed. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 809 N.E.2d 1248 (2004).

19

Consequently, applying the rules of statutory construction, I believe that *expressio unius est exclusio alterius* applies.

At common law, a contract that is otherwise legal is not unenforceable simply because it is performed in an illegal manner as long as the subject matter is legal. *Federal Land Bank of St. Louis v. Walker*, 212 Ill. App. 3d 420, 571 N.E.2d 242 (1991). There is nothing inherently illegal about contracting to put a new roof on a house. For example, a contract to build a home or an addition to a home may violate municipal ordinances if done without the requisite permits. Nonetheless, the violation of the law in performing the contract does not render the contract unenforceable. *Meissner v. Caravello*, 4 Ill. App. 2d 428, 124 N.E.2d 615 (1955); *Lavine Construction Co. v. Johnson*, 101 Ill. App. 3d 817, 428 N.E.2d 1069 (1981); *Mani Electrical Contractors v. Kioutas*, 243 Ill. App. 3d 662, 611 N.E.2d 1167 (1993).

There are three appellate court cases to date dealing with the Act. *Slepian* was decided in 2005. *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 831 N.E.2d 1169 (2005). A close reading of *Slepian* discloses that the decision states the Home Repair Act is applicable in a mechanics lien action. It does not even discuss the "So, what?" of that statement. It does not hold that the failure to strictly comply with the Home Repair Act renders a contract for home repair or remodeling unenforceable.

20

*Smith v. Bogard* is an interesting case. *Smith v. Bogard*, 377 Ill. App. 3d 842, 879 N.E.2d 543 (2007). There was an oral contract to build an addition to a home for "'$20,000 or less.'" *Smith v. Bogard*, 377 Ill. App. 3d at 843. At some point before construction was completed, the homeowner paid the contractor $15,000. Upon completion, the contractor gave the homeowner a final bill for approximately $25,500 (25% more than the high estimate). The appellate court held that the contractor could not recover the additional $10,500 allegedly due because it failed to comply with the provisions of the Home Repair Act. Reasonable people can look at the *Bogard* case and decide that it seems like a very fair result based on a contractor attempting to overreach. One has to wonder whether the appellate court would have reached the same result had the homeowner paid nothing up front or had the homeowner countersued for the return of the $15,000 paid up front. After all, if the contract is void and unenforceable because of a violation of the Home Repair Act, then the homeowner owed nothing, as the homeowner alleges she owes here. The *Bogard* court rejected the contractor's claims based on breach of contract, unjust enrichment and *quantum meruit*. The contractor did not attempt to plead a cause of action under the Mechanics Lien Act. I might add that the result could have been the same even without applying the Home Repair Act by virtue of the defenses available to the homeowner under the Mechanics Lien

21

Act. 770 ILCS 60/13 (West 2006).

The court in the *Miller Construction* case, in my opinion, got the right result with the wrong analysis. *K. Miller Construction Co. v. McGinnis*, 394 Ill. App. 3d 248, 913 N.E.2d 1147 (2009). I agree with Justice Wolfson that it makes no sense to deny contract damages on the basis that the contract violates public policy and then, in the next breath, to award equitable relief. *K. Miller Construction Co.*, 394 Ill. App. 3d at 267, 913 N.E.2d at 1162-63 (Wolfson, J., dissenting).

However, Justice Wolfson further asserts that failing to perform home repair work in strict compliance with the Home Repair Act renders a contract to do so unenforceable. *K. Miller Construction Co.*, 394 Ill. App. 3d at 267-68, 913 N.E.2d at 1162 (Wolfson, J., dissenting). He concludes that the legislature intended this result without any analysis to support that conclusion. I submit that this conclusion that performing a contract in violation of the law renders the contract void and unenforceable flies in the face of the contract law discussed above and set forth and summarized nicely in *Mani Electrical Contractors v. Kioutas*, 243 Ill. App. 3d 662, 611 N.E.2d 1167 (1993). Justice Wolfson's dissent fails to acknowledge that it was not the legislature that said any violation of the Home Repair Act, *ipso facto*, renders the contract unenforceable; it was some judges. In an ironic twist, Justice Wolfson cites Chief

22

Justice John Marshall in support of his judicial restraint argument. *K. Miller Construction Co.*, 394 Ill. App. 3d at 268, 913 N.E.2d at 1163 (Wolfson, J. dissenting).

There is nothing in the Home Repair Act to lead one to believe that the legislature intended it to be a giant legal "Gotcha!" permitting a homeowner to improve his or her house at the expense of an honest contractor. As pointed out by Justice McDade, the enforcement section allows the Attorney General to take action and gives the homeowner an action under the Consumer Fraud Act for any damages the homeowner might have sustained.

Apparently some courts fear that unless a violation of the Home Repair Act renders a contract for home repair unenforceable, homeowners will not be protected. Not so. In a mechanics lien action, the contractor still must prove faithful performance of a contract or an excuse for nonperformance. 770 ILCS 60/11 (West 2006). Poor performance, nonperformance, and/or fraud in the inducement will defeat or reduce recovery by the contractor in a mechanics lien action. 770 ILCS 60/13 (West 2006). The same is true in a common law contract action.

It is apparent that those who favor the *Bogard* construction of the Home Repair Act feel such a construction is necessary to "put teeth" in the Act. Thirty-five years ago, the Peoria police department had a police dog named Prince. Prince had teeth. Real sharp ones. Powerful jaws, too. The dog was to use those

23

teeth to bite and subdue criminals who were fleeing or fighting police.  The problem was, Prince bit virtually anybody and everybody, except his handler.  Prince bit as many officers and citizens as he did combative criminals.  In some instances, we are not talking about just drawing blood.  There were gaping holes, missing tissue, and broken bones where human flesh used to be.  After paying out a small fortune in personal injury settlements, the city decided it was time to retire Prince and pay for well-trained police dogs that use their teeth only as intended.

I submit the *Bogard* construction of the Home Repair Act, in addition to being unsupported by the statutory language, has created another Prince.  There is no need to unleash a dog that bites indiscriminately.  If there is fraud or failure to perform, the contractor's recovery under the Mechanics Lien Act will either be denied or reduced, depending on the facts of the particular case.  The dissent believes that anything other than strict compliance with the Act means no recovery for the work performed.  In the real world, this can mean financial hardship or even ruin for an honest, unsophisticated, small-time contractor who expends great time and materials on a project.  Nothing in the language of the Home Repair Act supports this draconian interpretation.

Justice Wolfson also points out the obvious: the contractor

can protect himself by simply having the homeowner sign the work order and handing him/her a consumer rights brochure. *K. Miller Construction Co.*, 394 Ill. App. 3d at 267, 913 N.E.2d at 1162-63 (Wolfson, J., dissenting). Absolutely a true statement, as far as it goes. However, the evil the Home Repair Act targets is not the failure to satisfy some societal need for more signatures or more brochures. It is dishonest contractors.

The legislature chose not to say that failure to secure a signature or hand a homeowner a brochure means the homeowner gets a free roof or addition. It did provide for other penalties. Courts should not ignore long-standing contract principles absent explicit statutory language to the contrary.

JUSTICE LYTTON, dissenting:

I dissent. I believe that defendant has the right to raise plaintiff's noncompliance with the Home Repair and Remodeling Act as an affirmative defense; furthermore, plaintiff's noncompliance with the Act precludes him from foreclosing on his mechanics' lien.

I

In 2000, the Illinois General Assembly created the Act because "the business of home repair and remodeling is a matter affecting the public interest." 815 ILCS 513/5 (West 2006). The purpose of the Act is "to safeguard the life, health, property and public welfare of [Illinois's] citizens" through "improved communications and accurate representations between persons engaged in the

25

business of making home repairs or remodeling and their consumers" in order to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices." 815 ILCS 513/5 (West 2006).

To effectuate its purpose, the Act imposes certain requirements on individuals and businesses involved in home repair and remodeling. See 815 ILCS 513/20 and 30 (West 2006). Section 20 of the Act requires that those engaged in the business of home repair and remodeling provide to their customers a copy of a pamphlet that explains consumers' rights prior to the execution of any home repair or remodeling contract. 815 ILCS 513/20(a), (b) (West 2006). If the contract is for over $1,000, the homeowner must sign a form acknowledging that he received a copy of the pamphlet, and the contractor must retain the form. 815 ILCS 513/20(a) (West 2006). Additionally, section 30 of the Act requires that contractors obtain a signed written contract or work order for work over $1,000. 815 ILCS 513/30 (West 2006).

Section 35 addresses enforcement of the Act: "The Attorney General or the State's Attorney of any county in this State may bring an action in the name of the people of this State against any person to restrain and prevent any pattern or practice violation of this Act." 815 ILCS 513/35(a) (West 2006). The Act contains no express provision conferring upon individuals, other than the Attorney General or State's Attorneys, a cause of action to enforce

26

the Act.  See 815 ILCS 513/35 (West 2006).

                                II

    The issue in this case is whether homeowners can raise a contractor's violation of the Act as an affirmative defense when a contractor is suing a homeowner.  Three Illinois courts have said that they can.  See K. Miller Construction Co., Inc. v. McGinnis, 394 Ill. App. 3d 248, 913 N.E.2d 1147 (2009); Smith v. Bogard, 377 Ill. App. 3d 842, 879 N.E.2d 543 (2007); Central Illinois Electrical Services, L.L.C. v. Slepian, 358 Ill. App. 3d 545, 831 N.E.2d 1169 (2005). In McGinnis, the First District held that a contractor who did not comply with the Act was precluded from recovering on his mechanics' lien foreclosure and breach of contract claims.  McGinnis, 394 Ill. App. 3d at 253, 913 N.E.2d at 1152.  In Bogard, the Fourth District held that a contractor's violation of the Act precluded him from bringing a breach of contract, unjust enrichment or quantum meruit action.  See Bogard, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548.  In Slepian, this court ruled that a homeowner can raise a contractor's violation of the Act as an affirmative defense to a suit to foreclose a mechanics' lien.  Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

    However, Justice McDade finds that because defendant had no private right of action to enforce the Home Repair and Remodeling Act, she cannot raise the Act as an affirmative defense.  I

                                27

disagree. Courts analyzing similar consumer protection statutes have found that a defendant can raise a violation of a statute as an affirmative defense even though the statute does not provide a private right of action.

In an analysis of this exact issue under the Motor Vehicle Retail Installment Sales Act (Sales Act) (815 ILCS 375/1 et seq. (West 1998)), this court, in a unanimous decision, ruled that a defendant could raise a plaintiff's violation of the Sales Act to defend against a plaintiff's claim even though the statute limits enforcement to the Attorney General or State's Attorney. Route 50 Auto Sales, Inc. v. Muncy, 331 Ill. App. 3d 515, 516-17, 771 N.E.2d 635, 636 (2002). The court reasoned that "the defendants did not file an action to enforce the provisions of the [Sales] Act in this case. Instead, the defendants are raising the violation of the [Sales] Act as a defense against plaintiff's action." Muncy, 331 Ill. App. 3d at 517, 771 N.E.2d at 636. Thus, the penalty provision of the Sales Act can be used as an affirmative defense to a plaintiff's claim for recovery. Muncy, 331 Ill. App. 3d at 517, 771 N.E.2d at 637.

Similarly, regulations adopted by the Department of Housing and Urban Development (HUD) pursuant to the National Housing Act (12 U.S.C. §1701 et seq. (2006)) may be raised as an affirmative defense in foreclosure actions even though the regulations do not create a private right of action. See Wells Fargo Home Mortgage,

28

Inc. v. Neal, 398 Md. 705, 922 A.2d 538 (2007); Prudential Insurance Co. of America v. Jackson, 270 N.J. Super. 510, 637 A.2d 573 (1994); Fleet Real Estate Funding Corp. v. Smith, 366 Pa. Super. 116, 530 A.2d 919 (1987); Bankers Life Co. v. Denton, 120 Ill. App. 3d 576, 458 N.E.2d 203 (1983); Cross v. Federal National Mortgage Ass'n, 359 So.2d 464 (Fla. App. 1978); Federal National Mortgage Ass'n v. Ricks, 83 Misc. 2d 814, 372 N.Y.S.2d 485 (N.Y. Sup. 1975). The court in Denton stated:

> "The legislative purpose of the National Housing Act *** is to assist in providing a decent home and a suitable living environment for every American family. Thus, the primary beneficiaries of the act and its implementing regulations are those receiving assistance through its various housing programs. This would include the defendants as mortgagors of a H.U.D. insured mortgage.
>
> Therefore, in order to effectively insure that the interests of the primary beneficiaries of the H.U.D. mortgage servicing requirements are being protected, mortgagors must be allowed to raise noncompliance with the servicing requirements as a defense to a foreclosure action." Denton, 120 Ill. App. 3d at 579, 458 N.E.2d at 205.

To allow a mortgagee to foreclose on a home despite its violation of HUD regulations "would be to permit it to subvert the very goal

29

the program was established to achieve and to make a mockery of the National Housing Act." Ricks, 83 Misc. 2d at 825, 372 N.Y.S.2d at 496.

Likewise, many states have held that a defendant can raise a plaintiff's failure to comply with the Farm Credit Act of 1971 (FCA) (12 U.S.C. §2001 et seq. (2006)) as a defense in a foreclosure proceeding even though the Act does not create a private right of action. See State ex rel. Farm Credit Bank of Spokane v. District Court of the Third Judicial District, 267 Mont. 1, 881 P.2d 594 (1994); Farm Credit Bank of Texas v. Sturgeon, 93-1536 (La. App. 3 Cir. 6/1/94); 640 So.2d 666; Burgmeier v. Farm Credit Bank of St. Paul, 499 N.W.2d 43 (Minn. App. 1993); Western Farm Credit Bank v. Pratt, 860 P.2d 376 (Utah App. 1993); Lillard v. Farm Credit Services of Mid-America, ACA, 831 S.W.2d 626 (Ky. App. 1991); Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445 (N.D. 1987). The FCA was created to protect borrowers "to ensure that they received fair treatment, due process and every realistic opportunity to avoid liquidation and stay in business." Redd v. Federal Land Bank of St. Louis, 851 F.2d 219, 222 (8th Cir. 1988). Allowing defendants to raise the FCA as a defense is necessary to achieve the statute's goal of advancing agricultural development and protecting farmers. See Burgmeier, 499 N.W.2d at 50; Lillard, 831 S.W.2d at 629; Overboe, 404 N.W.2d at 449.

In Production Credit Ass'n of Fargo v. Ista, 451 N.W. 2d 118

30

(N.D. 1990), the North Dakota Supreme Court explained:

> "There is a vast difference between allowing use of a regulatory violation as a 'shield' in the form of an equitable defense to foreclosure, and allowing its use as a 'sword' to create a state-based tort action for recovery of damages where no direct private right of action for damages is recognized." Ista, 451 N.W.2d at 125.

Applying this reasoning to the Home Repair and Remodeling Act, I find the analysis of the North Dakota Supreme Court compelling. Although a statute may inhibit its use as a private right of action, it may be employed as a defense against a violation of statutory requirements.

Considering the intent and purpose of the Home Repair and Remodeling Act, I find no reason to deviate from the rationale in our previous holding in Muncy. Like the Sales Act, the Home Repair and Remodeling Act was created to ensure that businesses treat consumers fairly and honestly. Compare Bogard, 377 Ill. App. 3d at 845, 879 N.E.2d at 546 (purpose of Home Repair and Remodeling Act is to promote fair and honest practices), with Chrysler Credit Corp. v. Ross, 28 Ill. App. 3d 165, 168, 28 N.E.2d 65, 68 (1975) (purpose of retail installment sales statutes is to protect consumers from fraud, deception and other unscrupulous practices). Allowing a contractor to sue a homeowner without regard to whether

31

the contractor complied with the Act would defeat the Act's purpose of protecting consumers and render the Act meaningless. See Bogard, 377 Ill. App. 3d at 848, 879 N.E.2d at 548 (refusing to allow contractor to recover under theories of unjust enrichment and quantum meruit because "[a]llowing a contractor a method of recovery when he has breached certain provisions of the Act would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy").

Although the legislature has restricted the use of the Act as an offensive tool, it has not prohibited a homeowner from using the Act as a defense against a contractor who seeks payment on a contract that the statute makes unlawful. Thus, a homeowner may raise a contractor's failure to comply with the requirements of the Act as an affirmative defense.

### III

Justice McDade and Justice Schmidt incorrectly hold that plaintiff's failure to comply with the provisions of the Act did not preclude him from foreclosing on his mechanics' lien.

The legal capacity to foreclose a mechanics' lien depends on the validity of the lien. G.M. Fedorchak & Associates, Inc. v. Chicago Title Land Trust Co., 355 Ill. App. 3d 428, 433, 822 N.E.2d 905, 909 (2005). The lien must be based on a valid contract; if it is not, the lien is unenforceable. G.M. Fedorchak, 355 Ill. App.

32

3d at 433, 822 N.E.2d at 909. When a contract does not comply with the Act, it is invalid and cannot form the basis of a breach of contract action or an action to foreclose a mechanics' lien. See McGinnis, 394 Ill. App. 3d at 253-54, 913 N.E.2d at 1152; Bogard, 377 Ill. App. 3d 842, 879 N.E.2d 543; Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

In McGinnis, the McGinnises orally agreed to pay Miller, a contractor, $187,000 for remodeling work in 2004. In 2005, the project expanded significantly and the McGinnises orally agreed to pay over $500,000. In 2006, Miller completed the project. The McGinnises paid Miller $177,580.33 but refused to pay any more. Miller filed a complaint against the McGinnises, alleging that he was entitled to (1) a lien on the McGinnises' property for over $300,000, (2) recover the unpaid balance based on breach of the oral contract, and/or (3) compensation for his labor, materials, and services on a quantum meruit theory. The McGinnises filed a motion to dismiss, arguing that Miller could not recover because he never provided a written contract as required by the Act. The trial court granted the McGinnises' motion to dismiss. The appellate court affirmed the trial court's dismissal of Miller's foreclosure and breach of contract claims, stating:

"We find no merit to Miller's contention that his
lien foreclosure claim in count I and his breach of
contract claim in count II can stand in the face of the

33

plain language of the Act that bars recovery for work that exceeds $1,000 on a residence without a written contract or work order."  McGinnis, 394 Ill. App. 3d at 253, 913 N.E.2d at 1152.

The court concluded, "In the absence of a written contract or work order, Miller's time and materials oral contract is unenforceable under the Act."  McGinnis, 394 Ill. App. 3d at 253, 913 N.E.2d at 1152.

In Bogard, a contractor provided homeowners with an oral estimate of "$20,000 or less" for a room addition but did not provide a written contract or a consumer rights pamphlet.  The homeowners filed a motion to dismiss the contractor's breach of contract action against them, claiming that the contractor was precluded from recovery.  The trial court agreed, and the appellate court affirmed the trial court's decision, stating: "We find the Act applies to Smith, that Smith violated several provisions of the Act, and those violations support the dismissal of his breach-of-contract claim."  Bogard, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548.

In Slepian, a contractor filed a complaint to foreclose a mechanics' lien against homeowners, alleging that they failed to pay for labor and materials the contractor provided under an oral contract for work on their property.  The homeowners raised an affirmative defense, alleging that because the contractor violated

34

the Act, the oral contract for services was void and, therefore, could not form the basis of recovery under a mechanics' lien. The trial court found in favor of the contractor. This court disagreed with the trial court's decision, stating:

> "The language of the Act clearly and unambiguously requires anyone engaged in the business of home repair and remodeling to obtain a signed contract before initiating work that will exceed $1,000 in cost. The trial court erred in concluding the Act did not apply in the instant case, and the court should now hear any claims that were dismissed on that basis." Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

We reversed and remanded the trial court's decision. Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

Here, plaintiff filed a suit to foreclose his mechanics' lien against defendant. Defendant filed an answer to the complaint, alleging that she stopped payment on her check to plaintiff because his work was defective. She further claimed that defendant violated the Home Repair and Remodeling Act by failing to provide her with a consumer rights pamphlet and obtain a signed written contract from her.

There is no question that defendant's failure to provide defendant with a consumer rights pamphlet and obtain a signed written contract prior to performing work on defendant's home

35

violated the Act.  See 815 ILCS 513/20(a), 30 (West 2006); McGinnis, 394 Ill. App. 3d at 253, 913 N.E.2d at 1152; Bogard, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548; Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.  Nevertheless, Justice McDade contends that these violations were merely "procedural errors."  I disagree with this characterization.

The Home Repair and Remodeling Act is written in mandatory terms requiring contractors to provide customers with a copy of a consumer rights pamphlets and obtain a signed written contract before beginning work.  See 815 ILCS 513/20(a), 30 (West 2006).  A contractor's failure to obtain a written contract prior to performing work over $1,000 is "unlawful."  815 ILCS 513/30 (West 2006).  Nothing in the Act excuses a contractor's failure to strictly abide by the Act's terms.

Because defendant did not sign the work order or any other written contract with plaintiff, there is no valid contract between plaintiff and defendant that could form the basis for plaintiff's mechanics' lien.  See Bogard, 377 Ill. App. 3d at 847-48, 879 N.E.2d at 548; Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.  Thus, since plaintiff's mechanics' lien is not based on a valid contract, it is unenforceable.  See G.M. Fedorchak, 355 Ill. App. 3d at 433, 822 N.E.2d at 909.  The trial court properly entered summary judgment in favor of defendant.

IV

36

The majority's decision in this case has far-reaching implications that will affect not only the Home Repair and Remodeling Act but at least 18 other Illinois consumer protection statutes that contain enforcement provisions like the one in the Act, which allow only the Attorney General and/or State's Attorney to bring an action to restrain violations.[8] Until now, this court,

---

[8] Those statutes are Residential Improvement Loan Act (815 ILCS 135/6 (West 2006)); Credit Card Issuance Act (815 ILCS 140/8 (West 2006)); Unsolicited Credit Card Act of 1977 (815 ILCS 150/4 (West 2006)); Copper Purchase Registration Law (815 ILCS 325/8 (West 2006)); Fraudulent Sales Act (815 ILCS 350/11 (West 2006) (created to prevent fraud and misrepresentations often associated with "going out of business" and "removal sales" (815 ILCS 350/2 (West 2006))); Motor Vehicle Retail Installment Sales Act (815 ILCS 375/23 (West 2006) (intended to protect consumers from fraud, deception and other unscrupulous practices (see Ross, 28 Ill. App. 3d at 168, 28 N.E.2d at 68)); Opthalmic Advertising Act (815 ILCS 385/8 (West 2006) (purpose is to "require advertisers of ophthalmic materials to tell the whole truth to the general public" for the public's protection, safety, and health (815 ILCS 385/1 (West 2006))); Platinum Sales Act (815 ILCS 395/7 (West 2006)); Resident Alien Course Act (815 ILCS 400/4 (West 2006)); Retail Installment Sales Act (815 ILCS 405/30 (West 2006) (intent

37

like countless others, has held that a consumer can raise a violation of such consumer protection statutes as an affirmative defense to a plaintiff's claim for recovery.  See Muncy, 331 Ill. App. 3d at 517, 771 N.E.2d at 637; Slepian, 358 Ill. App. 3d at 550, 831 N.E.2d at 1173.

Consumer protection statutes are to be liberally construed to effectuate their purpose of protecting consumers.  See Price v.

is to make borrowers more aware of consequences of incurring debts (see Garza v. Chicago Health Clubs, Inc., 347 F.Supp. 955, 962-63 (N.D. Ill. 1972))); Second-Hand Watch Act (815 ILCS 410/5 (West 2006)); Transportation Ticket Fraud Act (815 ILCS 415/3 (West 2006)); Travel Promotion Consumer Protection Act (815 ILCS 420/7 (West 2006)); Used Lubricant Act (815 ILCS 435/2 (West 2006)); Home Repair Fraud Act (815 ILCS 515/4 (West 2006) (goal is to "prohibit and prevent knowing use of fraud to induce an unwitting homeowner to actually enter into an agreement for home repair" (People v. Flynn, 341 Ill. App. 3d 813, 830, 792 N.E.2d 527, 542 (2003))); Internet Caller Identification Act (815 ILCS 517/15 (West 2008)); Job Referral and Job Listing Services Consumer Protection Act (815 ILCS 630/12 (West 2006)); Motor Vehicle Leasing Act (815 ILCS 636/75(1) (West 2006) (intended to "promote the understanding of vehicle leasing in this State by providing for the disclosure of lease obligations to consumer lessees") (815 ILCS 636/5 (West 2006))).

38

<u>Philip Morris, Inc.</u>, 219 Ill. 2d 182, 233-34. 848 N.E.2d 1, 32 (2005). Until today, this court has enforced the intent of these statutes in decisions such as Muncy and Slepian. The majority's opinion in this case, which precludes defendant from raising a violation as a defense, is a narrow, restrictive interpretation of the Act that substantially erodes the effectiveness the statutory scheme of Illinois's consumer protections. For these reasons, I dissent.